## HORSE CREEK CONSERVATION DISTRICT v. LINCOLN LAND COMPANY

(No. 2093; July 11, 1939; 92 Pac. (2d) 572)

For the defendant and the appellant, there was a brief by *Erle H. Reid* of Torrington, Wyoming, and *Mothersead* and *York* of Scottsbluff, Nebraska, and oral arguments by *Mr. Reid* and *Mr. York*.

For the respondent, there was a brief by *James A. Greenwood* of Cheyenne and *John L. Sawyer* of Torrington, and oral argument by *Mr. Greenwood.*

RINER, Chief Justice.

So far as appellate procedure is concerned, this cause is here pursuant to the provisions of Section 89-4910, W. R. S. 1931, a portion of the law governing direct appeals to this court for the purpose of obtaining the review of an order of the district court of Goshen County granting a new trial. The appellant, Lincoln Land Company, will be generally hereinafter referred to as the "defendant" or the "Land Company," and the respondent, Horse Creek Conservation District, as the "plaintiff" or the "District." While other facts appearing in the record will be mentioned in connection with the discussion of the several questions involved, a brief history of the litigation and the facts material to be considered are as follows:

The proceeding was initiated on April 10, 1933, by the District in accordance with the procedural steps required by Sections 122-422 to and including Section 122-427, W. R. S. 1931, in order to invoke the operation of that part of Section 122-421 reading:

"and in case the owner or owners of any such ditch, canal or reservoir shall fail to use the water therefrom for irrigation or other beneficial purposes during any five successive years, they shall be considered as having abandoned the same, and shall forfeit all water rights, easements and privileges, appurtenant thereto, and the water formerly appropriated by them may be again appropriated for irrigation and other beneficial purposes, the same as if such ditch, canal or reservoir had never been constructed."

In other words, it originated as a proceeding before the State Board of Control to secure a declaration of forfeiture of an appropriation of the waters of Horse Creek, in Goshen County, Wyoming, made by the predecessors in interest of the defendant and adjudicated under date of June 12, 1888, by a decree of the territorial district court of Laramie County when that subdivision of the state included what is now Goshen County, Wyoming. This appropriation of water thus adjudicated was for 45.48 cubic feet of water per second of time for the irrigation of 4500 acres of land, with a priority number of "52" and a priority date of September, 1884.

Subsequent to a hearing conducted by the Board of Control, as provided by law, at which the parties interested submitted evidence, that body, under date of April 20, 1934, entered its order declaring the water rights aforesaid, adjudicated as above described to the predecessor in interest of the Land Company, abandoned. Thereafter such proceedings were had—including an appeal from another order of the district court of Goshen County made in the course of the litigation, sustaining objections to its jurisdiction of the matter, Horse Creek Conservation District v. Lincoln Land Company, 50 Wyo. 229, 59 P. (2d) 763,—that pleadings were filed in the district court above mentioned to try the issue whether said water rights had in fact been abandoned. Trial was had to the court without a jury, and on April 22, 1938, there was filed in that court its form of "Findings and Decree" duly entered on that date, wherein it was adjudged that the aforesaid order of the Board of Control was reversed and vacated, the prayer of plaintiff's petition for forfeiture of the water rights involved was denied and the petition dismissed with prejudice, and in substance that the Land Company was the owner of and had the right to use the water rights above described.

The District in due time served and filed a notice of appeal from this decree, a record on appeal to this court, and on June 1, 1938, its specifications of error. June 2nd following, the district judge of the County aforesaid was notified of the filing of these specifications of error, and under date of June 20, 1938, entered his order granting a "new trial of the issues in said cause." This order assigned no specific reasons for the court's action in this respect. It is from this order that the present appeal was taken by the defendant. The Land Company on the same day that it served and filed its notice of appeal from the order aforesaid, to-wit, June 28, 1938, filed also its specifications of error relating thereto, asserting, first, that the court had no jurisdiction at the time to make such an order "for the reason that the Clerk of this Court had notified the Judge thereof before whom this action was tried in writing on the 2nd day of June, 1938, that the record on appeal in this cause was perfected and on file in her office and more than fifteen days had elapsed after said Judge received said notice before he made and entered the order appealed from, to-wit: a period of eighteen days"; second, that the record on appeal failed to "show any grounds that would justify the granting of an order for a new trial of said cause"; and, third, that the court erred in granting a new trial.

At this point it is well to recall that Section 122-427, supra, requires that in cases of this character the issue tried by the district court "shall be whether or not such water rights have in fact been abandoned." Referring to plaintiff's petition we find it is therein averred that it is the owner of water rights "authorizing it to divert and take for beneficial use the waters of Horse Creek," under some six permits, with priorities of date May 25, 1908, July 18, 1908, October 13, 1913, and July 16, 1920, respectively; and concerning the charge of abandonment of the water right of the defendant, it is

pleaded that "at the time when plaintiff filed its application for its permits hereinabove set forth and for more than thirty-five years prior thereto, the defendant had not used or attempted to use under said water right any of the available quantity of water flowing in the channel of Horse Creek; that said water right had been prior to the filing of plaintiff's application for a legal declaration of the abandonment of said water right, long since lost and forfeited by nonuser during a period of many years and for more than five years immediately prior to the filing by plaintiff of its applications for said permits and ever since hitherto up to and including the time that plaintiff's petition was filed with the State Board of Control to obtain a legal declaration of abandonment of said water right"; and also that "the defendant has not for more than thirty-five years last past, maintained any ditch, canal, diversion works and/or laterals whereby water could be diverted during any of said period of time from Horse Creek and be conveyed therefrom and to any of the lands of the defendant, Lincoln Land Company, claimed to have been irrigated with water diverted under said water right; that no crops have been raised upon said lands by reason of any irrigation thereof and that the said lands remain at this time and have during said period of more than thirty-five years last past in the same condition they were in prior to September 18th, 1884." These allegations of plaintiff's petition were denied by the answer filed on behalf of the defendant.

The decree of the district court mentioned above as entered on April 22, 1938, made certain findings of fact, among which were the following:

"4. That there have been adjudicated rights to take and appropriate waters out of Horse Creek with dates of priority earlier than the appropriation of the Defendant for 411.81 second feet of water."

"5. That there have been appropriations allowed and adjudicated from Horse Creek for the taking of

appropriations of water therefrom with priorities junior and subsequent to the appropriation of the Defendant and priorities superior and prior to the earliest permit and right of the Plaintiff 483.72 second feet of water and in addition thereto 7515.51 acre feet of water to be diverted from Horse Creek and stored."

"6. The Court further finds that the maximum flow of Horse Creek is not sufficient to supply appropriators junior to the Defendant and prior to the plaintiff even though the Defendant and all prior appropriators failed to take water."

"7. The Court further finds that from about the year 1910 the defendant has each and every year up to the time of the finding and declaration of abandonment by the State Board of Control in the year 1934, taken and used all water available in Horse Creek which it was permitted to take and use by the administrative officers for the State of Wyoming who had the charge and control of the distribution of waters of Horse Creek, and applied the same to a beneficial use by the applying and application of water to land for the production of hay and pasturage."

The average maximum flow of Horse Creek so far as can be told by the record is between 60 and 65 second feet, and this occurs during the winter months from December 1st to May 1st. This statement is in accord with the testimony given by the plaintiff's witness Donahue, State Water Commissioner.

The contention is advanced for the defendant that the district court had no jurisdiction to grant a new trial eighteen days after being notified that the record on appeal and specifications of error were on file in the Clerk's office of that court.

The pertinent portions of Section 89-4910 of our code of procedure relative to direct appeals from district courts to this court involved in this section are:

"The clerk of the district court shall, within five days after the specifications of error are filed in his office, notify the judge of the district court before whom the action was tried, in writing, that the record on appeal in the cause is perfected and on file in his office, and it

shall thereupon become the duty of such judge, within fifteen days after receiving such notice, to review the record on appeal and consider the specifications of error, and if such district judge shall determine that the party appealing is entitled to a new trial of the issue he shall make and enter an order in the cause granting the party appealing a new trial, in which event the record shall remain with the clerk of the district court for trial in said court, unless the respondent shall appeal to the supreme court from the order of the district court, granting the appellant a new trial, in which event the record on appeal, as perfected, shall constitute the record on appeal in the cause; provided, further, that if the judge of said district court shall neglect or refuse to grant the appellant a new trial within the period of twenty days from the date on which the specifications of error are filed with the clerk of the district court, said clerk shall thereupon transmit to the clerk of the supreme court the record on appeal and the specifications of error."

In Allen v. Lewis, 26 Wyo. 85, 177 P. 433, it was held that the provisions of the law above excerpted, authorizing the district court to award a new trial to an appellant on the appeal record and specifications of error filed, within twenty days from the date such specifications of error are filed, might be waived by consent and the record retained in the trial court until the expiration of the extended time. In that connection this court said:

"An affirmative statutory provision relating to the time or manner of performing official acts unlimited or unqualified by negative words is generally considered as directory rather than mandatory, though it is a question of intention, to be ascertained from a consideration of the entire act, its nature and object and the consequences that might result from construing it one way or the other. (Lewis' Sutherland on Stat. Const., 2nd Ed., Sec. 610; 36 Cyc., 1157.) And with reference to courts of record or general jurisdiction, a statute limiting the time for a decision or judgment has frequently been held to be directory only. (Citing authorities) * * * *.

"There are no negative words in the statute under consideration, unless the provision for transmitting the record to this court upon the neglect or refusal of the district court to grant a new trial within the twenty day period is to be given that effect."

If the statutory time within which the district judge may grant a new trial may be extended by stipulation of the parties to the cause, it would hardly seem that its provisions are imperative. However, an inspection of the statutory language of Section 89-4910 makes it clear that the law does not say that the district judge shall within the fifteen days assigned for his review of the record on appeal and consideration of the specifications of error enter his order either refusing or granting a new trial. Any time limitation clause relating to that matter is found in the phrase "if the judge of said district court shall neglect or refuse to grant the appellant a new trial within the period of twenty days from the date on which the specifications of error are filed with the clerk of the district court, said clerk shall thereupon transmit" to this court the record on appeal and the specifications of error. In the case at bar the order granting a new trial was made within this twenty day period and before the record left the control of the district court of Goshen County. According to Section 89-4911, W. R. S. 1931, the Supreme Court does not acquire jurisdiction over the cause until the record is filed here. It is our opinion, therefore, that the defendant's contention may not be upheld.

Relative to the provisions of Section 122-421, above quoted, it is argued for the respondent that, 1st, "All that need be shown under this statute is the nonuser for the statutory period of time"; 2nd, that "the forfeiture automatically follows a failure to use" the water right; and, 3rd, that the Legislature in the adoption of such language in the statute has supplied the intent which need not be established by evidence when the five years of nonuser is established. While the third propo-

sition of this argument may be conceded, we are not inclined to agree with either the first or the second. It is also suggested for the District that the allegations of plaintiff's petition quoted above were erroneous in that "there was no occasion to allege that the thirty-five years prior to the time the plaintiff filed its applications for permits with the State Engineer" the water right of the defendant in controversy now had not been used, and in that connection it is said that these averments nevertheless warned the defendant that "it would be called upon to meet proof that its water right had been lost by reason of non-user over the period of time embraced within this paragraph," i.e., that the plaintiff could show by its evidence a non-user by the defendant of the water right involved for any five year period within this thirty-five year span, and that the defendant was obliged to meet evidence of this character. With this view, also, we are not in accord.

It may be conceded that the record before us is to the effect that while during the years 1888 to 1908 the Horse Creek Ditch No. 1 of the defendant, in connection with which the water right in controversy was adjudicated, was repaired two or three times by its then owner, still it was not effectively used to carry water for application to a beneficial use upon the land. However, this fact, if it is a fact, does not, as plaintiff contends, solve the questions arising in the litigation before us.

The District, after directing our attention to the condition of the record just adverted to, further says:

"The testimony is just as convincing that since 1908 water has been in some amount each year taken from Horse Creek through the enlarged Horse Creek No. 1 Ditch and used for the irrigation of land not exceeding 180 acres from which hay was cut and pasture was produced."

We think that the evidence goes beyond this and

shows that the defendant during the irrigation season used all the water available for it, as found by the trial court in its finding No. 7, quoted above, and that at least during the ten years following 1921 or 1922 there has been sub-irrigation from a half to three quarters of a mile from the 66 Pastures Reservoir, which is attached to the Land Company's Horse Creek Ditch No. 1, aforesaid, and situated on the defendant's lands for the purpose of supplying water to produce pasturage and hay.

That the defendant did not use all the water to which it was entitled when it could not get it, hardly makes a case of non-user within the principle invoked in Ramsay v. Gottsche, 51 Wyo. 516, 69 P. (2d) 535, and cases there cited; i.e., that abandonment under Section 122-421, supra, must be effected by voluntary act and cannot be accomplished through enforced discontinuance.

It is interesting to note in this connection also, that in Zezi v. Lightfoot, 57 Idaho 707, 68 P. (2d) 50, considering a statute reading, "All rights to the use of water acquired under this chapter or otherwise shall be lost and abandoned by a failure for the term of five years to apply it to the beneficial use for which it was appropriated, and when any right to the use of water shall be lost through nonuse, or abandonment such rights to such water shall revert to the state and be again subject to appropriation under this chapter," (a portion of Section 41-216, I. C. A.) the court remarked:

"It will be noticed that it is the nonuse for five years which works an abandonment. Abandonments and forfeitures are not favored. Hurst v. Idaho-Iowa L. & R. Co., 42 Idaho 436, 246 P. 23. And even though forfeited and abandoned for five-year periods prior to the time respondents initiated their appropriation, if subsequent to such five-year periods, and prior to respondent's appropriation, appellants or their predecessors in interest under claim of right and continuity of interest of diversion and application of the Noble water, as

such, for mining purposes to the amount applied, rediverted and applied water, there would be no abandonment which could inure to the benefit of respondents. Union Grain, etc. Co. v. McCammon D. Co., 41 Idaho 216, 240 P. 443; Ramshorn Ditch Co. v. United States (C. C. A.) 269 F. 80, at page 84 (4)."

Reverting now to Section 122-427, supra, we find that portion of the Wyoming law directs that cases of this character "shall be tried and determined in all respects by the rules governing civil actions" in the district courts of this state. One of those rules is contained in Section 89-414, W. R. S. 1931, relative to the time of commencing actions and reads:

"An action for relief, not hereinbefore provided for, can only be brought within ten years after the cause of action accrues."

Assuming for the sake of argument merely that the cause of action in a case of the kind we now have before us, accrues when the owner of a water right has voluntarily failed to use water for the period of five consecutive years when he could have had it and needed it for the irrigation of his land, then it is clear that plaintiff failed to establish that it brought this action so as to avoid the statute of limitations above quoted. On the contrary it appears from the record as hereinbefore indicated that it did not do so, the instant proceedings not being commenced until April 10, 1933. Again, if we were to assume that the right of action did not accrue until a forfeiture had been declared, it is obvious also that the District would not be aided herein, but would be in a still more disadvantageous situation.

We are aware that under the ruling of this court in Town Council of Hudson v. Ladd, 37 Wyo. 419, 263 P. 703, the defense of the statute of limitations must be raised by demurrer or answer. This is a general rule.

But it would appear there is a logical exception to this rule. 37 C. J. 1217, Section 721, says:

"The defense of limitations may also be relied on, although not pleaded, where the failure to plead the statute is not the fault of defendant, as where the real cause of action does not appear from plaintiff's pleadings but is developed only by his testimony."

And the author of 1 Wood on Limitations (4th Ed.) Sec. 7, Page 31, very well remarks that: "The rule that the statute must be pleaded applies only where there is an opportunity to plead it." In Gottschall v. Melsing, 2 Nevada 185, the court said:

"In this case, whilst plaintiffs' evidence shows they rely exclusively on a mining right claim which is barred by a limitation of two years, the complaint is silent as to the foundation of the right sought to be enforced, so that the defendants could not know, from anything contained in the complaint, that a limitation of less than five years applied to this action. Consequently, it was not the fault of the defendants' pleadings that the Statute was not pleaded.

"Under such circumstances the defendants were evidently entitled to either one of two things. They were entitled to all the benefits of the Statute of Limitations, without a special plea of the Statute, or upon the close of the plaintiffs' testimony they were entitled to amend their answer so as to set up that defense. Neither party should be allowed to obtain an unfair advantage by the concealment and suppression of facts. The defendants were entitled to every indulgence from the Court in making good their defense, because the plaintiffs attempted to evade the Law of Limitations by concealing the foundation of their claim, and only developing the real nature of the action when they introduced their testimony."

In the case before us we find that the non-user period, on which plaintiff was really relying, was not disclosed until its evidence was all submitted. Defendant then asked for judgment in its favor because "any action for forfeiture of water-right is barred by the statute of

limitations of the State of Wyoming prescribing the time within which an action for forfeiture of water-right can be brought." We are inclined to think that this step taken on behalf of the Land Company was equivalent to a plea of the statute made as soon as it became at all clear just what plaintiff's claim as to nonuser actually was. Assuredly it warned the plaintiff that the statute of limitations would be raised by the defendant. It may be suggested also that there can be no doubt that if a new trial were to be had the defendant would be allowed to amend its answer by inserting therein the necessary allegations to bring this defense into the case.

But, if we should be mistaken in this view of the matter, it is quite clear that the claim of nonuser as established by the evidence in this case is subject to the defense of laches as claimed by the Land Company. The record establishes that the persons who had charge of the property and Horse Creek Ditch No. 1 as defendant's predecessors in interest have long since died and the testimony and evidence they might have supplied is gone. Notwithstanding the fact that the defendant was using the water from Horse Creek as it was able to obtain it during the irrigating season of each year after 1908, neither the plaintiff nor any one else on the stream seems to have attacked the defendant's claim to the water right in question until 1933, approximately a quarter of a century in time.

In Sullivan v. The Portland and Kennebec Railroad Company et al., 94 U. S. 806, the court said:

"To let in the defense that the claim is stale, and that the bill cannot, therefore, be supported, it is not necessary that a foundation shall be laid by any averment in the answer of the defendants. If the case, as it appears at the hearing, is liable to the objection by reason of the laches of the complainants, the court will, upon that ground, be passive, and refuse relief. Every case is governed chiefly by its own circumstances; some-

times the analogy of the Statute of Limitations is applied; sometimes a longer period than that prescribed by the statute is required; in some cases a shorter time is sufficient; and sometimes the rule is applied where there is no statutable bar. It is competent for the court to apply the inherent principles of its own system of jurisprudence, and to decide accordingly."

See also Richards v. Mackall, 124 U. S. 183, 31 L. Ed. 396.

So 4 Pomeroy's Equity Jurisprudence (4th Ed.) Page 3412, quotes the language of Judge Sanborn used in the case of Kelley v. Boettcher, 85 Fed. 55, 29 C. C. A. (Eighth Cir.) 14, to the following effect:

" 'In the application of the doctrine of laches, the settled rule is that courts of equity are not bound by, but that they usually act or refuse to act in analogy to, the statute of limitations relating to actions at law of like character. The meaning of this rule is that, under ordinary circumstances, a suit in equity will not be stayed for laches before, and will be stayed after the time fixed by the analogous statute of limitations at law; but if unusual conditions or extraordinary circumstances make it inequitable to allow the prosecution of a suit after a briefer, or to forbid its maintenance after a longer, period than that fixed by the statute, the chancellor will not be bound by the statute, but will determine the extraordinary case in accordance with the equities which condition it. * * * When a suit is brought within the time fixed by the analogous statute, the burden is on the defendant to show, either from the face of the bill or by his answer, that extraordinary circumstances exist which require the application of the doctrine of laches; and, when such a suit is brought after the statutory time has elapsed, the burden is on the complainant to show, by suitable averments in his bill, that it would be inequitable to apply it to his case.' "

In reaching the conclusion that laches on the part of the District should be deemed applicable in this case, we do not mean to intimate that under certain circumstances the same principle might not be applied if a

much shorter period of resumption of use of the water right of the defendant was involved.

We are also inclined to the view that before the forfeiture of vested water rights provided for by Section 122-421 should be construed to be operative, there should be a formal declaration thereof procured by some one clothed by law with proper authority to invoke it.

The decisions cited below relative to analogous statutes are in our judgment of persuasive weight.

Where an Act of Congress (March 3, 1891) directed,

"That if any section of said canal or ditch shall not be completed within five years after the location of said section the rights herein granted shall be forfeited as to any uncompleted section of said canal, ditch, or reservoir, to the extent that the same is not completed at the date of the forfeiture,"

it was ruled by the court in United States v. Whitney, 176 Fed. 593, that:

"This requirement being in the nature of a condition subsequent, the rule undoubtedly is that failure to comply therewith does not operate ipso facto to divest the grantee of the title and reinvest the grantor therewith, but that to be effectual, the default must be followed with a declaration of forfeiture by some competent authority, and, the grant here being of a public nature, such declaration can be made only by an act of Congress, or in an appropriate judicial proceeding. United States v. De Repentigny, 5 Wall. 211, 267-268, 18 L. Ed. 627; Schulenberg v. Harriman, 21 Wall. 44, 62-64, 22 L. Ed. 551; Farnsworth v. Minnesota, etc. Ry., 92 U. S. 49, 66-68, 23 L. Ed. 530; McMicken v. United States, 97 U. S. 204, 218, 24 L. Ed. 947; Bybee v. Oregon, etc., Ry., 139 U. S. 663, 674-677, 11 Sup. Ct. 641, 35 L. Ed. 305; St. Louis, etc. Ry. v. McGee, 115 U. S. 469, 472-475, 6 Sup. Ct. 123, 29 L. Ed. 446; Railroad Co. v. Mingus, 165 U. S. 413, 430-434, 17 Sup. Ct. 348, 41 L. Ed. 770."

Of similar purport is the case of Spokane & British

Columbia Railway Co. v. Washington & Great Northern Railway Co., 219 U. S. 166, 31 S. Ct. 182, 55 L. Ed. 159. In the course of its opinion filed therein the court said:

"The leading case is Schulenberg v. Harriman, 21 Wall. 44, 22 L. ed. 551. In that case there was an act of Congress making a grant of lands, conditioned that all lands remaining unsold after ten years should revert to the United States. It was there held that notwithstanding this condition, no one could take advantage of its nonperformance except the grantor or his heirs, or the successors of the grantor, if the grant proceeded from an artificial person, and that unless such persons asserted the right to forfeiture, the title remained unimpaired in the grantee; and it was further held that if the grant be a public one, the right to forfeiture must be asserted by judicial proceedings authorized by law, the equivalent of an inquest of office at common law, or there must be some legislative assertion of ownership for the breach of the condition."

See also Adams v. Terrell, 101 Tex. 331, 107 S. W. 537; Carns v. Idaho-Iowa Lateral & Reservoir Co., 34 Idaho 333, 202 P. 1071; Verde River Irrigation & Power District v. Salt River Valley Water Users' Ass'n., 94 Fed. (2d) 936.

That our view of the matter coincides with the intention of the Legislature relative to the procedure necessary in litigation of this character is confirmed, we think, by the phrasing of the first sentence of Section 122-422, W. R. S. 1931:

"When, pursuant to the provisions of § 122-421, any water user who might be affected by a *declaration* of abandonment of existing water rights, desires to bring about a *legal declaration* of such abandonment, he shall present his case in writing to the board of control."

We have italicized the significant words in the sentence as they bear on the point now under consideration. If, as urged by the plaintiff, Section 122-421 was to be regarded as self executing and automatic in its operation, we hardly believe the law-making depart-

ment of the state would have used the language it did, indicating so emphatically that a "declaration" of abandonment should be had and providing the method for obtaining it. It may be observed additionally that, unless some kind of formal determination of this character were had, no one dealing with real estate in the arid sections of our state, the value of which property would be very little without the water rights attached thereto, could at any time be sure as to his title to the most vital part of the property he held. Unsettlement of titles to real property is not a result to be reached lightly and without strong legal reasons to support it. It is quite obvious, too, that until a declaration of forfeiture has been made the owner of the water right still retains the title to it and is justified, of course, in his continued use thereof. When, as in the case at bar, for more than ten years that continuous use has prevailed and no declaration of forfeiture has been sought of the water right in question, neither the administrative officers of the state nor any other person is entitled to invoke the forfeiture immediately thereafter, as directed in Sections 122-422 to 122-427, inclusive.

Finally, returning again to the opening words in the sentence last above quoted from the procedural statute, Section 122-422, supra, "when, pursuant to the provisions of · § 122-421, any water user who might be *affected* by a declaration of abandonment," etc., it is manifest that the italicized word, "affected," is both significant and controlling. It indicates to our mind that it was not the legislative purpose to open the door to any person whomsoever to undertake proceedings to procure a declaration of abandonment. Those who are authorized to use the procedure set forth in Sections 122-422 to 122-427, W. R. S. 1931, inclusive, are only those whose rights would be "affected."

Says the Supreme Court of Iowa in Holland v. Dickerson et al., 41 Iowa 367: "A right is affected if it is

either enlarged or abridged." See also McCormick v. Central Coal & Coke Co., 117 Kan. 686, 232 P. 1071; Butterfield v. Butler, 50 Okla. 381, 150 P. 1078; Harris v. Friend, 24 N. Mex. 627, 175 P. 722. Our statute evidently means, therefore, that if a party's water rights would be abridged in some way, i.e., changed to his disadvantage, he may invoke the statutory procedure. And this is substantially the view expressed by the United States District Court for the District of Wyoming in Hagie v. Lincoln Land Co., 18 Fed. Supp. 637, where the court said:

"Cases from other jurisdictions have been cited which announce the principle that one purporting to complain of a diversion must show that he will suffer from it. In United States v. Haga (D. C.) 276 F. 41, the principle is stated in the syllabus as follows: 'An appropriator from a main channel can complain of a diversion from a tributary only if and when such tributary would, if not interfered with, make a valuable contribution to the main stream.'

"It would seem to be at least a reasonable principle to adopt in a construction of the statute, that the plaintiff should be required to prove that he would be benefited if defendant's appropriation were cut off."

The accuracy of the findings of the trial court numbered "4," "5" and "6" and quoted supra, do not seem to be seriously questioned by the plaintiff, and they would appear to be based principally upon evidence appearing in official data. They were admitted in evidence by consent of both parties. From these findings it is apparent that there are 895.53 second feet appropriated from the waters of Horse Creek, whose maximum average flow during the months of April and May when the stream delivers its largest volume, as stated by the Water Commissioner, Donahue, who is in official charge of Horse Creek, is, as we have seen, 60 to 65 second feet a day, with priorities which are entitled to be satisfied before the plaintiff may take water to sat-

isfy the permits held by it. Under such circumstances it is difficult to perceive that plaintiff's rights would be appreciably improved even if the Horse Creek No. 1 Ditch rights were declared abandoned.

Some notations as to the District's own evidence in the case are likewise confirmatory of this view: The plaintiff's witness Sherard testified that the District has usually obtained the most water it received during the months of March and April and that as a rule it does not run water "later than the first of May" and that during the last five years the District has not obtained any water after the middle of April. This was said concerning the direct and usual flow of the stream. It is significant in that connection the record also discloses that the defendant itself received no water in 1934 and nothing to amount to anything since then. The Water Commissioner, Donahue, aforesaid, testifying for the plaintiff, also stated that if Horse Creek No. 1 Ditch did not draw water under its priority, the other priorities between it and the plaintiff would have to be satisfied before the latter received any, and that if the priorities of the K. J. Ranch Ditch, the headgate of which is above and some of its priorities ahead of the Horse Creek No. 1 Ditch of the defendant, took all the water it was entitled to there would be nothing left for Horse Creek No. 1.

One of the officials of the plaintiff, Austin, as plaintiff's witness, testified that even if one of the early appropriators were "cut off" that most of the time the water could not get down to the plaintiff at all if some appropriator between the District and the appropriator who was cut off would take it; that plaintiff's whole system depends pretty largely upon flood waters and extraordinarily heavy rains; that this is the reason the District has the reservoir instead of the direct flow of Horse Creek; that the plaintiff stores water in its reservoir at any time it can get it, but the particular

storage season runs from October to as late in the spring as it is possible to get water; that the District gets some water from October to May 1st, and sometimes through the summer months from heavy rains that produce floods; that the plaintiff is generally known as a flood water project; and that the bulk of its storage is made during the winter months when it is impossible to irrigate through the ditches on account of snow and ice.

In our judgment plaintiff cannot properly be said to be a water user "who might be affected by a declaration of abandonment." While statements of conclusions by witnesses in the case may be found in the record to the effect that plaintiff's rights would be affected, the proven facts, we think, are to the contrary.

All things considered, as disclosed by the record before us, we are convinced that a new trial of the case if had and controlled, as it necessarily would have to be, by this court's views of the applicable legal principles hereinabove discussed, would not reach a different result than did the trial court in its judgment originally entered.

We recognize and adhere to the rule heretofore frequently announced in our decisions, that a much stronger case for reversal is required where a new trial has been granted by the district court than where one has been refused (McDaniel v. Hoblit, 34 Wyo. 509, 245 P. 295; Barrett v. Oakley, 40 Wyo. 449, 278 P. 538). But in the case at bar we have before us questions of law which arise upon the record and which if correctly decided require, in our opinion, a judgment for the defendant. See 4 C. J. 833, Section 2814, and cases cited thereunder. While some of the findings of the district court in its original judgment may not be strictly accurate, we deem the judgment itself to be correct.

The order of the district court of Goshen County

granting a new trial is accordingly reversed, with the directions to reinstate the judgment originally entered and set aside by that order.

*Reversed with Instructions.*

KIMBALL and BLUME, JJ., concur.