Curtis (Buddy) CREMER, Appellant
(Petitioner),

Frank Bosler, (Petitioner),

v.

STATE BOARD OF CONTROL, Schmid
Properties, Inc., and Laramie Valley
Municipal Irrigation District, Appellees
(Respondents).

Frank BOSLER, Appellant (Petitioner),

Curtis (Buddy) Cremer, (Petitioner),

v.

STATE BOARD OF CONTROL, Schmid
Properties, Inc., and Laramie Valley
Municipal Irrigation District, Appellees
(Respondents).

Nos. 5793, 5794.

Supreme Court of Wyoming.

Jan. 9, 1984.

Rehearing Denied Feb. 1, 1984.

Jack R. Gage of Hanes, Gage & Burke, P.C., Cheyenne, for appellant Cremer.

Jay Dee Schaefer of Jay Dee Schaefer & Associates, Laramie, for appellant Bosler.

A.G. McClintock, Atty. Gen., Walter Perry, III, Sr. Asst. Atty. Gen., John D. Erdmann, Asst. Atty. Gen., Cheyenne, for appellee State Board of Control.

William R. Jones and Eric M. Alden of Jones, Jones, Vines & Hunkins, Wheatland, for appellee Schmid Properties, Inc.

C.M. Aron of Aron & Hennig, Laramie, for appellee Laramie Valley Municipal Irr. Dist.

Before ROONEY, C.J., and RAPER,* THOMAS, ROSE and BROWN, JJ.

ROSE, Justice.

On August 20, 1980 a petition in abandonment was filed with the Wyoming Board of Control, the purpose of which was to seek the abandonment of water rights and water works authorities associated with James Lake in Albany County, Wyoming, in which appellants Bosler and Cremer had an interest.[1]

* Retired June 13, 1983, but continued to participate in the decision of the court in this case pursuant to order of the court entered June 13, 1983.

On the 2nd of September, 1981, the Board of Control responded to the abandonment petition by ordering water rights in James Lake Reservoir and Supply system to be partially abandoned in that the order limited storage in the lake to three feet above the bottom of its outlet, which limitation represented an abandonment of approximately 90% of the reservoir capacity. The Board abandoned one of appellants' sources of water supply and drastically reduced the capacity in their water transfer canal, thus inhibiting its ability to transport water from its principal remaining sources. Further, the Board abandoned all of the appellants' distribution system downstream from the reservoir as well as all of their secondary permits.

James Lake—some 18 miles northwest of the city of Laramie, Wyoming—is a shallow, natural basin located at the terminus of Seven Mile Creek which flows out of the mountains west of Laramie. Beginning in 1908 the James Lake Reservoir Company undertook to obtain various permits from the State Engineer for the purpose of constructing and operating an irrigation system in the James Lake area. The acquisition of permits continued through 1912, construction of the system was accomplished in the very early part of the century, and beneficial use was established on the land described in the permits prior to 1925.

Appellee Schmid Properties, Inc. (hereinafter referred to as Schmid, Inc.) owns the Hunt Ranch attached to which are various upstream underlying or base[2] water rights on streams and ancillary drainages which also serve the James Lake system. The underlying or base Hunt appropriations carry priorities which predate 1945 and are senior to the same classification of James Lake permits in which the appellants have

1. In this opinion we have reference to Curtis (Buddy) Cremer and Frank Bosler when we speak of the "appellants."

2. We use the terms "underlying" and "base" to describe the nonsurplus water rights to which this opinion has reference.

an interest and which, as has been noted, also predate the year 1945.[3]

## THIS COURT'S HOLDING

We will reverse the court of first instance which had affirmed the order of the Board of Control and we will hold that, since Schmid, Inc.'s pre-1945 water rights were senior to appellants' pre-1945 rights, and it appearing that appellee Schmid, Inc. does not complain that these rights are not being serviced, it follows that, absent the enactment of the surplus water act of 1945, the appellees would have no standing to bring abandonment against the underlying or base rights of the appellants.[4] We will further hold that the surplus water act did not serve to confer upon Schmid, Inc. such standing as would permit it to successfully petition in abandonment in the case at bar.

## SCHMID, INC.'S CONTENTION

Schmid, Inc. contends it has standing to bring abandonment proceedings against the base or underlying as well as the surplus water rights of the appellants under § 41-3-401(b), W.S.1977 which provides:

"*When any water user who might be affected by a declaration of abandonment of existing water rights*, desires to bring about a legal declaration of abandonment, he shall present his case in writing to the state board of control."[5] (Emphasis added.)

Schmid, Inc.'s legal position comes more sharply into focus when its brief and hearing contentions are taken into account. In its brief, Schmid, Inc. says:

"Appellants state in their briefs that all of the Hunt Ranch's water rights are senior to the rights being abandoned. This is simply not true. Like all water rights in existence in Wyoming as of March 1, 1945, the Hunt Ranch permits have two water rights attached to them. *The first right has a priority date based on the time of filing of the original application for a permit, the second right, in the amount of 1 c.f.s. per 70 acres, has a priority date of March 1, 1945, pursuant to § 41-4-320. It is this second right, the right created by the Wyoming Surplus Water Law, which will be affected by a declaration of abandonment of the permits in question in this action.*" (Emphasis added.)

Schmid, Inc.'s attorney took a similar position in arguing against the contestee's motion to dismiss the abandonment petition before the water superintendent who conducted the motion hearing. Schmid, Inc.'s counsel was addressed by the superintendent:

"Mr. Jones, I would like to ask you to explain more fully your position that you could be injured on the basis of your surplus water assignment.

"MR. JONES: The existence of these rights, *all of which we are seeking to have abandoned*, are rights which, if they are determined to be validly existing, will be entitled to satisfaction prior to the time that the rights of the Petitioner would receive a double appropriation. And that's the position." (Emphasis added.)

It is, then, the contention of Schmid, Inc. that it and the appellants are possessed of two classes of water rights upon the same stream system—i.e., (1) water rights under pre-1945 adjudication and (2) surplus water rights under the legislative adjudication of March 1, 1945. Schmid, Inc. argues that, in passing the surplus water act of 1945, it was the intention of the legislature to cause surplus water rights to become junior to pre-1945 rights, thereby bestowing

---

3. The year 1945 is significant because it was on March 1st of that year that the Wyoming surplus water law, § 41-4-317 through § 41-4-324, W.S.1977, became effective.

4. *Mitchell Irr. Dist. v. Whiting,* 59 Wyo. 52, 136 P.2d 502 (1943).

5. Those who are authorized to utilize the abandonment procedure under this section of the statute

"* * * are only those whose water rights would be 'affected.'" *Horse Creek Conservation Dist. v. Lincoln Land Co.,* 54 Wyo. 320, 342, 92 P.2d 572, 580 (1939).

such standing under the abandonment statute, § 41-3-401(b), as would permit any surplus user on a stream system to bring abandonment proceedings against pre-1945 and surplus water rights of any other user on the same water system.

## APPELLANTS' CONTENTION

It is the appellants' contention that Schmid, Inc. has no standing to bring abandonment proceedings because its appropriation will not be "affected" under the abandonment statutes in that:

(1) The benefit which Schmid, Inc. seeks through abandonment is not such "benefit" as is concerned with the protection of its water rights, and

(2) The surplus water statute, § 41-4-324, prohibits the diversion or taking of water "other than surplus water," and the appellee Schmid, Inc. seeks, contrary to law, to take the water authorized by the appellants' pre-1945 permits which is not "surplus water."

## THE BOARD OF CONTROL'S DECISION

Prior to the proceedings before the Board of Control, Bosler and Cremer joined in a motion to dismiss the abandonment petition upon the grounds that Schmid, Inc. was not possessed of standing to complain since Schmid, Inc. was receiving all of the water to which it was entitled under both appropriations, and therefore could not be said to be a "water user who might be affected by a declaration of abandonment of existing water rights." (§ 41-3-401(b), supra.) The motion was denied for the reason that the abandonment of the appellants' water rights would result in a "benefit" to Schmid, Inc. In its Findings of Fact, the Board found:

"15. THAT * * * a declaration of abandonment would benefit the Petitioner by allowing the continued use of surplus waters from Four Mile and Seven Mile Creeks to supply its prior rights, since only so much of the water rights from these sources not abandoned by this order could be used to fill the James Lake Reservoir * * *. Similarly, the Petitioner's prior right on the Snake Ditch would be benefited by continued use of surplus flows in the Little Laramie River and Mill Creek, when available, because the appropriations to supply James Lake Reservoir would be reduced or eliminated." (Emphasis added.)

In its Conclusions of Law the Board says, at ¶ 4:

"* * * The Petitioner has standing to have its Petition for Abandonment heard and decided by the State Board of Control. Its standing pertains to all of the permits in question. As against the diversions from the Little Laramie River and Mill Creek, the Petitioner is affected because of its prior downstream rights in the Snake Ditch. And as against the impoundment of the Seven Mile Creek flood flows and the diversion of Four Mile Creek waters into James Lake Reservoir, the Petitioner is affected because of its direct flow water rights in the same two sources of supply. Under the Surplus Water Law, W.S. 41-4-317 through W.S. 41-4-324, the Petitioner and its predecessors have enjoyed a 1945 junior priority right to the distribution of the surplus waters from all four sources of supply. If this petition is not granted, the Petitioner could lose the benefit of its surplus water rights due to demands for regulation of these sources of supply for the purpose of filling James Lake Reservoir." (Emphasis added.)

The sum and substance of the Board's resolution of the issue is that Schmid, Inc. had standing to bring abandonment because it was an appropriator whose surplus water adjudication made its rights junior to the appellants' base rights and, because it would "benefit" from the abandonment of Bosler's and Cremer's water rights, was, therefore, an "affected" water user under the abandonment statute, § 41-3-401(b).

## THE DISTRICT COURT'S DECISION

The district court in its order emanating from the appellants' petition for review af-

firmed the Board of Control's order with respect to Schmid, Inc.'s standing to bring an abandonment petition.

## RELEVANT SURPLUS WATER STATUTES

Section 41–4–317, W.S.1977 contemplates the determination of priorities of rights of use, the amounts of the appropriations based upon the acreage irrigated, limitations of water to be allotted and disposition of excess water, and provides in relevant part:

" * * * [P]rovided, further, where there may be in any stream water in excess of the total amount of all appropriations from said stream, *such excess shall be divided among the appropriators therefrom in proportion to the acreage covered by their respective permits * * *.*" (Emphasis added.)

Surplus water is defined in § 41–4–318, W.S.1977 to be that water which *"at any time* [exceeds] the total amount required to furnish to all *existing appropriations"* (emphasis added) the amount of water which had been granted as of March 1, 1945.

Section 41–4–320, W.S.1977 provides in part:

"(a) A right to the use of *surplus water as herein defined* in the amount of one (1) cubic foot of water per second for each seventy (70) acres of land having an adjudicated water right or a water right under permit *is hereby adjudicated to attach to all original direct flow water rights * * *.*" (Emphasis added.)

## SURPLUS WATER DISTRIBUTION IN WYOMING

In *Budd v. Bishop,* Wyo., 543 P.2d 368 (1975), we identified, with approval, the manner in which the State Engineer was allocating surplus water rights when we said:

"The defendants [State Engineer] consistently have interpreted the Wyoming Surplus Water Law to the end that each water right with a priority date of March 1, 1945 or earlier, is entitled to divert water in the volume of two cubic feet per second of time for each 70 acres of land before any water is made available to the holder of a water right with a priority date after March 1, 1945. If there is not sufficient water to furnish two cubic feet per second to each pre-March 1, 1945 water right, but more than enough to furnish one cubic foot per second to each of such rights, then the surplus water is divided among those rights on a pro rata basis. If there is so little water that each pre-March 1, 1945 right cannot receive one cubic foot per second, they are regulated on a strict priority basis. Should there be sufficient water to furnish two cubic feet per second for each 70 acres of land to the pre-March 1, 1945 water rights and to furnish one cubic foot per second for each 70 acres of land for the post-March 1, 1945 water rights, and should there be excess water beyond that, it is allowed to the post-March 1, 1945 appropriators up to the extent of two cubic feet per second of time for each 70 acres." 543 P.2d at 370.

## THE LAW OF STANDING—GENERALLY

We discussed the law of standing in *Washakie County School District Number One v. Herschler,* Wyo., 606 P.2d 310, 317, cert. denied 449 U.S. 824, 101 S.Ct. 86, 66 L.Ed.2d 28 (1980), where, in summary, we said that for a party to have standing to sue he must have a legally protectable and tangible interest at stake in the litigation, *Guidry v. Roberts,* La.App., 331 So.2d 44, 47 (1976); he must be such a party as is sufficiently affected so as to insure that a justiciable controversy is presented to the court, *Washakie County School District Number One v. Herschler,* supra, citing 67A C.J.S. Parties § 12, p. 662; he must be such a party as is entitled to a "right to relief," 67A C.J.S. Parties, supra, at p. 662; the question of whether a party has standing "goes to the existence of the cause of action," 67A C.J.S. Parties, supra, at p. 662; the interest of the plaintiff must be a "present, substantial interest, as distin-

guished from a mere expectancy, or future, contingent interest," 59 Am.Jur.2d, Parties, § 28, Present substantial interest as requisite, p. 379; and the same text in the same section contemplates that the plaintiff when commencing the action must have a valid and subsisting title or right to the subject thereof. His subsequent acquisition, or perfection of a right to the subject of the action during the pendency of the suit, will not remedy the defect so as to enable him to maintain the action.

## THE LAW OF THIS CASE

*The contestant cannot show that its water rights are abridged and thus it is not an "affected" water user under the abandonment statute, § 41-3-401(b).*

■ Before the surplus water act of 1945, Schmid, Inc. would not have been possessed of standing to bring abandonment proceedings against the base or underlying water rights of the appellants because Schmid, Inc.'s rights were senior to the rights of Cremer and Bosler and it would, therefore, be unable to successfully assert that it is a water user who would "be affected" (abandonment statute language) by a declaration of abandonment of "existing water rights." *Mitchell Irr. Dist. v. Whiting*, 59 Wyo. 52, 136 P.2d 502, 508 (1943).

A water user is statutorily "affected" by a declaration of abandonment if his water rights are abridged. *Horse Creek Conservation Dist. v. Lincoln Land Co.*, 54 Wyo. 320, 92 P.2d 572, 580 (1939), with citations. In *Horse Creek* we said that a water user's rights would be abridged when they are *"changed to his disadvantage."* (Emphasis added.) We put the concept this way in *Horse Creek:*

> "Finally, returning again to the opening words in the sentence last above quoted from the procedural statute, Section 122–422, supra, 'when, pursuant to the provisions of § 122–421, any water user who might be *affected* by a declaration of abandonment,' etc., it is manifest that the italicized word, 'affected,' is both significant and controlling. It indicates to

our mind that it was not the legislative purpose to open the door to any person whomsoever to undertake proceedings to procure a declaration of abandonment. Those who are authorized to use the procedure set forth in Sections 122–422 to 122–427, W.R.S.1931, inclusive, are only those whose rights would be 'affected.' " * * * Our statute evidently means, therefore, that if a party's water rights would be abridged in some way, i.e., changed to his disadvantage, he may invoke the statutory procedure." 92 P.2d at 580.

■ It was said in *Haige v. Lincoln Land Co.*, D.C.Wyo., 18 F.Supp. 637, 639 (1937), where Wyoming's abandonment statute was under consideration:

> " * * * It is claimed by the defendant that the plaintiff is not legally qualified to challenge the water rights of the defendant because of the fact that he does not come within the provisions of the statute as one eligible to present a contest. Section 122–422, W.R.S.1931, provides in part: 'When, pursuant to the provisions of § 122–421, *any water user who might be affected by a declaration of abandonment* of existing water rights, desires to bring about a legal declaration of such abandonment, he shall present his case in writing to the board of control.'
>
> "In respect of this statute it is urged that the plaintiff is in no wise affected through the use of water by the defendant in the manner which has been above outlined. If it be held that the plaintiff is affected through the use of water by defendant on Fox creek, ten miles below plaintiff's land under the facts in this case, it would mean that pure theory must place plaintiff in a position to become a contestant of defendant's rights. The evidence in this case from the practical standpoint shows rather conclusively that the *plaintiff's rights could in no way be affected injuriously* or otherwise by the exercise of the defendant in its claimed right of appropriation. Apparently the Supreme Court of this state has

not passed upon this feature of the statute. *Cases from other jurisdictions have been cited which announce the principle that one purporting to complain of a diversion must show that he will suffer from it.* In *United States v. Haga* (D.C.) 276 F. 41, the principle is stated in the syllabus as follows: *'An appropriator from a main channel can complain of a diversion from a tributary only if and when such tributary would, if not interfered with, make a valuable contribution to the main stream.'* " (Emphasis added.)

In *Campbell v. Wyoming Development Co.*, 55 Wyo. 347, 100 P.2d 124, 140, reh. denied 55 Wyo. 347, 102 P.2d 745 (1940), we said:

"Before a party may attack the right of another, either on constitutional or other grounds, he must first show that he himself has a right which has been invaded thereby. He must have an interest which is affected."

The theme of *Horse Creek*, supra, *Haige*, supra, and *Campbell*, supra, threads its way through our opinion in *Mitchell Irr. Dist. v. Whiting*, supra, 136 P.2d 502, where we held that a prior appropriator (of nonsurplus water) cannot interfere with the rights of a junior appropriator so long as the senior receives all the water to which his appropriation entitles him. In *Mitchell*, we said:

"2 Kinney, on Irrigation and Water Rights, 2d Ed., 1377, Section 789 remarks that: 'So long as the prior appropriator obtains all the water of satisfactory quality to the full extent of his appropriation, he has no right to interfere with or complain of the enjoyment of the rights of subsequent appropriators on the stream.' * * * See, also, *Clough v. Wing*, 2 Ariz. 371, 17 P. 453; *Albion-Idaho Land Company v. Naf Irrigation Company et al.*, 10 Cir., 97 F.2d 439, 444." 136 P.2d at 508.

In *Mitchell*, we also quoted 2 Weil, Water Rights in the Western States, 3d Ed., § 1155, where it is said:

" 'To entitle the complaining party to relief against the distant use while not himself using the water on his land, and hence suffering no present damage, it must actually appear that the impairment of water supply by diversion for distant use will interfere with the use of the water by complainant on his land in the future, or will deteriorate the value and adaptability to full use of his land, or that a taking for distant use will interfere with his enjoyment of his rights in a watercourse.' " 136 P.2d at 508.

We therefore reiterate the historic rule (which is nothing more than the law of standing applied to water users in an abandonment proceeding) that an appropriator's rights are not "affected" for the purpose of bringing abandonment unless those rights are changed to his disadvantage. In other words, he has to be able to show *injury*. A water user may not bootstrap standing for the purpose of bringing abandonment of his neighbor's water rights when the only effect of the abandonment would be to enlarge the contestant's appropriation as distinguished from protecting his right to use his previously appropriated water.

■ Given these concepts, which were developed before the enactment of the surplus water law of 1945, the question in the case at bar is:

The effect of the surplus water act upon Schmid, Inc.'s standing to bring abandonment of the appellants' base and surplus water rights.

In addressing this issue, it is necessary to keep in mind that we are, in this appeal, concerned with two different categories of water rights: First, there are the *base rights* of both the appellants and the appellees, concerning which Schmid, Inc. is senior to Cremer and Bosler, and, secondly, all parties are possessed of *surplus water rights* which are "attach[ed]"[6] to all original and direct-flow water rights in the state as of March 1, 1945.

**6.** Section 41-4-320, supra.

Without either urging or proving that its use of its water rights are being or will be abridged, Schmid, Inc.'s rationale, which is supported by the Board of Control and the trial court, is that it has standing to bring abandonment since it would "benefit" if more surplus water were made available in the stream. It goes on to argue that, since all surplus water is, by statute, inseparably attached to base rights, it follows that *all water rights* of the appellants must necessarily be abandoned so that Schmid, Inc. may realize the "benefit" from the release to the stream of the appellants' water.

Under the authority set out above, we hold that Schmid, Inc.'s contention must fail because it cannot show and has not shown that its water rights under either its original or surplus water appropriations have been or will be abridged. Its original rights have not been abridged because they are senior to and take priority over all of appellants' contested water rights. Its surplus rights have not been abridged because, pursuant to §§ 41–4–318 and 41–4–320, supra, and our approval of the Board of Control's distribution of surplus water,[7] such rights are mere entitlements to participate in the existing pool of surplus water according to a formula which contemplates the inclusion of all appropriators' authorized irrigable acreage and is applied to the amount of water in the stream system at any given time. Since surplus rights do not confer authority to divert a specified amount of water, there is no quantifiable appropriation subject to protection through abandonment proceedings. Furthermore, an action in abandonment based on its surplus rights, if permitted, would only have the effect of enlarging Schmid, Inc.'s appropriation through an increase in the stream system's surplus water supply but would not be possessed of standing's necessary and corollary requirement of *protecting Schmid, Inc.'s statutory right* to take its proportionate share from the existing pool of surplus water.

7. *Budd v. Bishop,* supra.

*The surplus water statute, § 41–4–317, W.S.1977 prohibits the taking of the appellants' base rights.*

It seems to be conceded that the surplus water of the state of Wyoming attaches to base appropriations and the acreage contemplated thereby. See § 41–4–317, § 41–4–318, § 41–4–320, and *Budd v. Bishop,* cited and discussed supra. This being so, it follows that a 1945 surplus water appropriation could not be abandoned for nonuse without abandoning the water right upon which it depends and to which it is "attach[ed]" (§ 41–4–320, supra). Therefore, an abandonment proceeding brought under any theory that Schmid, Inc. may be "affected" by Cremer's and Bosler's utilization of their water adjudications depends upon an allegation of standing to bring abandonment against the appellants' pre-1945 appropriations. This is prohibited by § 41–4–324 of the surplus water statute, which provides:

"Nothing in this act [§§ 41–4–317 to 41–4–324] shall be so construed as to permit, authorize or make lawful the diversion or taking of any water other than surplus water as herein defined."

This section of the statute spells out the intent of the legislature not to allow the surplus water act to confer standing to attack nonsurplus water rights. Since the surplus water rights involved in this appeal came into being through attachment to existing pre-1945 appropriations and cannot claim separate and independent existence, it follows that it is not possible to abandon the appellants' surplus water rights without abandoning their base rights. This, the statute prohibits.

### SUMMARY

We hold, then, that the surplus water law does not authorize its utilization for the purpose of bestowing junior appropriator standing upon a base right senior appropriator such as Schmid, Inc. in order that such senior appropriator may establish that he is "affected" within the purview of the abandonment statute. This holding

contemplates these propositions: First, the base and surplus water rights of Schmid, Inc. are not being abridged by the appellants' utilization of the water contemplated by their corresponding appropriations. Secondly, it would be necessary to abandon the appellants' base rights in order to effect abandonment of their surplus water rights, and the surplus water law (§ 41-4-324, supra) prohibits its utilization for the purpose of taking or diverting other than surplus water.

Reversed.