## MITCHELL IRR. DIRSTRICT v. WHITING, COM'R.

(No. 2257; April 27, 1943; 136 Pac. (2d) 502)

For the appellants, there was a brief by *James A. Greenwood,* of Cheyenne, and oral argument by *Mr. Greenwood.*

For the defendant and respondent, there was a brief by *Ewing T. Kerr*, Attorney General; *Harold I. Bacheller*, Deputy Attorney General; and *Arthur Kline*, Ass't. Attorney General, and oral argument by *Mr. Kerr*.

RINER, Justice.

The Mitchell Irrigation District, plaintiff below and appellant here, brought a suit in the District Court of Goshen County, Wyoming against John A. Whiting, Jr., Water Commissioner of Water District No. 14, Division No. 1 of the State of Wyoming as defendant in that court and respondent here. These parties will be generally designated hereinafter, the appellant as the "plaintiff" or the "District" and the respondent as the "defendant" or the "Commissioner." The purpose of the suit was to obtain a mandatory injunction requiring the defendant to prevent the diversion of water from the natural channel of the North Platte River in Wyoming by certain canals in this state known as the Lucerne, Torrington, Rock Ranch Enlargement, Burbank, and Graten Enlargement. All of the head gates and diversion works of these canals are situated on said river above those of the plaintiff which last are situated in Wyoming about one-half mile west of the boundary line between the states of Wyoming and Nebraska.

The facts which are deemed necessary and proper to be considered in order to dispose of this case are substantially as follows: The plaintiff is a Nebraska Corporation and all the lands for which it takes water from the North Platte River by means of the diversion works above mentioned are located entirely in the State of Nebraska. Its principal place of business and the residence of its executive officers are also in the State of Nebraska. On October 2, 1920, the Board of Control of the State of Wyoming adjudicated in favor of the plaintiff a water right in the natural flow of the waters of the North Platte River to the extent of 194.6 cubic feet per second of time, said water right being given a

priority date of June 20, 1890 for the irrigation of the lands heretofore mentioned and for livestock and domestic purposes.

The defendant is the duly appointed and acting Commissioner of Water Division No. 1, District No. 14 in the State of Wyoming which embraces that portion of Goshen, Converse, and Natrona Counties in Wyoming from the Nebraska-Wyoming boundary line westerly to the location of the Pathfinder reservoir in Natrona County wherein a portion of the basin of the North Platte River is located. It is the duty of the defendant as such Water Commissioner at all times, when available quantities of water flowing into the channel of said river are not sufficient to fully satisfy the demands of all appropriators, to supervise the diversion of the water of said river within the territory under his jurisdiction among the several ditches and reservoirs withdrawing water therefrom according to the priority right of each appropriator having lands requiring irrigation in this state. It is his duty also to regulate or cause to be regulated the distribution of water among the various users of water in Wyoming and to prevent the use of water by an appropriator making use of water in this state in excess of the volume thereof to which said appropriator is lawfully entitled. The defendant's duties as such Commissioner dealt with and related to the disposition of such water during the years 1940 and 1941. The North Platte River is an interstate non-navigable stream as it passes through Goshen County, Wyoming into the State of Nebraska at the western boundary line of the state last mentioned separating that state from the State of Wyoming.

The record before us discloses that on the thirteenth day of December, 1934, the District Court of Scottsbluff County, Nebraska in a suit then pending between the State of Nebraska, ex rel. C. A. Sorensen, Attorney

General, as plaintiff and the Mitchell Irrigation District as defendant (plaintiff here) with Farmers Irrigation District as Intervener and Cross-Petitioner determined that the Mitchell Irrigation District was and is subject to the jurisdiction and control of the State of Nebraska; that said last mentioned District Court by its injunction order directed the said Mitchell Irrigation District to permit no water to flow into its canals until such time as permission so to do was given by the State of Nebraska through its proper officials; that this action on the part of the District Court of Scottsbluff County was thereafter and on September 20, 1935 affirmed by the Supreme Court of the State of Nebraska (128 Neb. 745, 262 N. W. 543; certiorari denied March 30, 1936, 297 U. S. 723, 56 S. Ct. 667, 80 L. Ed. 1007) ; that since that decision became final the officials supervising the diversion of water in Nebraska have claimed the sole right to control the water of the North Platte River as it may be diverted by the headgate of the Mitchell Irrigation District aforesaid for the benefit of the lands of said district; that the pertinent portions of said injunction order made as aforesaid are, as we view them, as follows: It adjudged, inter alia, that:

"Mitchell Irrigation District, its canal, laterals and entire irrigation system lying and being within the State of Nebraska are subject to the jurisdiction and control of the State of Nebraska, the Department of Roads and Irrigation, Bureau of Irrigation, Water Power and Drainage, pursuant to and by virtue of the laws of the State of Nebraska, as are all other irrigation districts whose diversion works are located entirely within the State of Nebraska. * * *" and "that the government of the State of Nebraska, the Department of Roards and Irrigation or the Bureau of Irrigation, Water Power and Drainage of the State of Nebraska shall have the power and authority to go upon the property of the defendant, Mitchell Irrigation District, within the State of Nebraska, and close its

canal by dams or otherwise, and cause said canal to be so closed for the purpose of forcing the defendant, Mitchell Irrigation District, to do and perform those things and acts required of irrigation districts by the statutes of the State of Nebraska, and for the further purpose of enforcing the laws of the State of Nebraska pertaining to priority of appropriations and to protect prior appropriators down the stream within the State of Nebraska. * * *" and "that the Mitchell Irrigation District, its officers, agents and employees and the successors of the present officers, agents and employees, and the landowners within said district, be and they hereby are perpetually enjoined from diverting any water from the North Platte River into the canal of the said Mitchell Irrigation District and conducting any water into the State of Nebraska through the said canal of said Mitchell Irrigation District and delivering it to the lands lying within the boundaries of said district at such times when there is not a sufficient supply in the North Platte River to supply the needs of prior appropriators lower down the stream in Nebraska within the limits of their appropriations. * * *" and "that when, in order to conserve the rights of and furnish water to prior appropriators for irrigation purposes within the State of Nebraska, the Department of Roads and Irrigation, Bureau of Irrigation, Water Power and Drainage of the State of Nebraska, or any of its officials, or any board or bureau hereafter created, thereunto lawfully authorized, has either closed or ordered the defendant, Mitchell Irrigation District, to close its headgates, then said defendant, Mitchell Irrigation District, shall keep said headgates closed and permit no water to flow into its canal until such time as the State of Nebraska, the Department of Roads and Irrigation, Bureau of Irrigation, Water Power and Drainage, or its officers duly authorized, shall have given permisison to said defendant, Mitchell Irrigation District, to open its headgate. * * *"

It appears that there are in the State of Nebraska appropriations of water from the North Platte River possessing priorities earlier in point of time than that of the plaintiff; that such priorities are entitled to take pursuant to their adjudicated priorities, two thousand

seventy-five and seventy one-hundredths cubic feet of water per second of time. However, the testimony of Mr. Willis, Chief of the Bureau of Irrigation, Water Power, and Drainage of the State of Nebraska, given by deposition to be used and in fact used on the trial of this case was to the effect that the "upstream" water was not asked for these appropriations except approximately not quite one-half of this amount, the principal canals thus affected being the Tri State with an appropriation of 905 cubic feet per second of time, and the Castle Rock canal with an appropriation of some 82.57 cubic feet per second of time. The Tri State canal, as we understand from the record, is the canal whereby the Farmers Irrigation District diverts water from the North Platte River in Nebraska, and its headgate is located on that river in Nebraska about two miles easterly and downstream from the headgate of the plaintiff.

There are certain canals, located in Wyoming and used for the irrigation of Wyoming lands solely, whose headgates are situated on the North Platte River westerly and upstream from the headgate of the plaintiff. They are known as the Lucerne Canal, the Torrington Canal, Rock Ranch Enlargement Canal, Burbank Canal, and Graten Canal Enlargement, hereinabove already mentioned, and are entitled to divert from the North Platte River altogether approximately 100 cubic feet of water per second of time. The headgates of all of these canals last mentioned are located within a thirty mile distance upstream from plaintiff's headgate.

On August 3, 1940, a meeting of certain parties was held in the office of the Farmers Irrigation District in

Scottsbluff, Nebraska. At that meeting the following written but unsigned memorandum was drawn up:

"Scottsbluff, Nebraska
August 3, 1940

MEMO:

At a meeting of the Board of Directors of the Mitchell Irrigation District, the Farmers Irrigation District, and R. H. Willis, the Farmers Irrigation District agrees not to object to the State Bureau of Irrigation permitting the Mitchell Irrigation District to divert such amount of water from the river as is contributed to the river by completely closing Wyoming canals now diverting water between Whelan and the Nebreska-Wyoming state line less transportation losses from the headgates of closed Wyoming canals to the state line.

"It is understood that *there is no consideration for this agreement* but it is merely a voluntary attempt by the Farmers Irrigation District to aid the Mitchell Irrigation District, *the agreement may be terminated at any time* and the Mitchell Irrigation District will cease diverting water under this arrangement within 24 hours after notice by the Farmers Irrigation District to the Bureau of Irrigation of Nebraska that such arrangement is no longer desirable from said district's point of view. *It is understood that any reason deemed sufficient by the Farmers Irrigation District shall be conclusive reason for the termination of the agreement,* and Mitchell agrees to close immediately at the time ordered by the Bureau of Irrigation of Nebraska.

"It is further understood that the Mitchell Irrigation District will divert no water except such as is supplied at its headgate by Wyoming appropriators having been closed and that the Nebraska Bureau of Irrigation will make frequent inspections and computations each day during the time this arrangement is in effect to determine how much water is at the Mitchell Irrigation District headgate which has been contributed by closing Wyoming canals that are now drawing water between Whalen Wyoming and the Nebraska-Wyoming state line, aforesaid." (Italics supplied.)

The defendant was never formally or officially notified of this "Memo" and learned of its existence through

hearsay only. He saw it for the first time about two weeks before the trial of this case commenced on September 23, 1941.

As may be gleaned from the pleadings in the record before us and pertinent portions of the testimony taken in the suit and hereinafter to be set forth, the controversy between the parties hereto centers about the shortage of water for the plaintiff's use arising during the latter part of the summer seasons of the years 1940 and 1941.

The case was tried to the court and upon the request of counsel, findings of fact and conclusions of law were made by the court. The judgment thereon incorporated also a general finding in favor of the defendant, John A. Whiting, Jr., denied the injunction sought, and dismissed the plaintiff's petition without prejudice.

Portions of the testimony submitted to the court and which we deem material to be kept in mind in reviewing that judgment may be set forth as follows:

Roy Johnson, an employee of the plaintiff connected with it for some 10 years and the superintendent and ditch rider of the Mitchell Ditch for three years last past, stated as a witness for the plaintiff in substance that during the years 1938, 1939, and until August 1, 1940, plaintiff practically had all the water it needed for the irrigation of crops and "got by pretty fair."

Guy Spurrier, another witness for the plaintiff who was one of three directors of the plaintiff District for a period of about nine years—from 1931 to 1940—stated that during all that period there was no material shortage of water for the plaintiff prior to the forepart of August, 1940 when it was very short and crops were thereby injured; that 1940 was a dry year. On cross-examination he further stated that when the Board demanded of the defendant that the headgates of junior appropriators in Wyoming should be closed in 1940,

194.6 second feet of water went past plaintiff's headgate; that he did not know of any time after the year 1936 when Wyoming officials ever told the plaintiff District to close its headgate.

The Chief of the Bureau of Irrigation, Water Power and Drainage of the State of Nebraska, R. H. Willis, gave his testimony for the plaintiff, a deposition, as we have seen. In the course of that testimony he stated that he had held that office since 1919, the duties of his office requiring him to deal with anything connected with the administration and use of water and drainage as to all the streams in the State of Nebraska; that he also has been acquainted with the North Platte River since 1895 when he was Water Commissioner for the division in which the plaintiff District is located; that under Nebraska law the doctrine of priority in the use of water prevails; that he is charged with the duty of the regulation of the water flow on the river aforesaid in Nebraska; that all of the lands of the plaintiff which are irrigated from the North Platte River are located in the state of Nebraska, the headgate of plaintiff's canal being in Wyoming; that prior to the year 1936 the plaintiff District took whatever water came down the river regardless of the priorities of users of water from that stream in Nebraska, and whenever the plaintiff wanted it; that the priority recognized for plaintiff in Nebraska is June 20, 1890; that the Farmers Irrigation District has a water right with a priority date of September 16, 1887 for 905 second feet, and its headgate in Nebraska is, as stated above, about two miles down the North Platte River from plaintiff's headgate.

On cross-examination the witness last mentioned, in part, said that he did not recognize the right of the defendant to regulate plaintiff's headgate; that witness supervises the irrigation over all the lands of the plaintiff the same as he did for the other Nebraska appropriators; that prior to 1936 the officials of the plaintiff

thought that the Nebraska water officials had no jurisdiction over the plaintiff on account of the headgate of its main canal being in the state of Wyoming and that that fact controlled the matter; that since the decision in the Sorensen case, supra, became final in 1936, the witness felt that the State of Nebraska had authority to control plaintiff's use of the water; that prior to 1936 Wyoming allowed plaintiff to have more water than Nebraska water officials thought the plaintiff was entitled to have; that as far as the witness knows, the officials of the State of Wyoming are more than willing to give the plaintiff its full adjudication from the North Platte River, and that witness thinks that the water officials of Wyoming are "leaning backwards" to assist the plaintiff in getting water; that witness has never known of junior rights in Wyoming or Colorado having been closed for the benefit of senior rights in Nebraska on the North Platte River; that he has never known the water of the North Platte River having been administered upon an interstate basis; that at the time the "Memo" above set forth was made, some 646 second feet were passing the state line between Wyoming and Nebraska; that the average stream flow in August, 1941 of the North Platte River was far less than half of the Nebraska appropriations and less than half of its appropriations senior to the plaintiff; that on the basis of priority if every senior canal to plaintiff demanded the full amount of their water needs, the plaintiff would not receive water through closing the junior canals in Wyoming; that the closing of the headgates of the junior canals in point of priority in Wyoming would be a tentative proposition based on whether the Farmers Irrigation District with its Tri State canal terminated the "Memo" above quoted; that as a matter of fact the only real consistent senior demand in Nebraska that has to be met before the plaintiff can get water is the Tri State, and "when the needs of the

Farmers Irrigation District are met, any water you get below that amount is for the plaintiff''; that the witness would not agree to give the defendant authority to regulate the rights that are senior to the Mitchell Irrigation District in Nebraska so that the demands will not be so great and thereby supplying plaintiff its right in the use of the North Platte water.

The defendant called for cross-examination, testified in part substantially that if the amounts of water taken by the five canals junior in priority right to plaintiff had been turned into the North Platte River channel by closing their headgates, this would have increased the amount of water arriving at the plaintiff's headgate about ten per cent; that witness did not attempt to close any appropriator junior to plaintiff in 1940 or 1941 when the latter made demand that that be done as there was no necessity to do this inasmuch as ''there was sufficient water for plaintiff, but they neglected to take it.''

J. F. King, a Director of the plaintiff District, in the course of his testimony for the plaintiff said on cross-examination that in August, 1940, plaintiff's ditch was closed by the officials of the State of Nebraska; that at that time about 500 cubic feet of water per second was passing plaintiff's headgate and witness asked the defendant to close some Wyoming rights junior to plaintiff which were appropriating a total of about 100 second feet; that during the two years the witness was on plaintiff's Board of Directors, the defendant opened the plaintiff's headgate once in August, 1941, upon the plaintiff making demand on the defendant that he give the District some water; that plaintiff's headgate stayed open on this occasion approximately two days and then Mr. Willis, Chief of Roads and Irrigation in the State of Nebraska, ordered it closed forthwith, and plaintiff District obeyed the order; that the witness agrees with the testimony of Mr. Willis in this case that

up to the year 1936 the water officials of the State of Wyoming "leaned over backward" to help plaintiff get water.

The Irrigation Engineer, R. I. Meeker, residing in Denver, Colorado, also testified as a witness for the plaintiff that the State of Nebraska has exercised full and complete jurisdiction over the plaintiff District since 1936 when the decision of the Supreme Court of Nebraska in the Sorensen case, supra, became final. This witness further stated on cross-examination that if water rights junior to the plaintiff had been closed in the month of August, 1940, by the defendant, the plaintiff District might have received some water and "might not have received any of that water"; that witness knows of no reason why junior water rights should be shut off for the benefit of a senior right if the senior right will not receive the water; that during August of the year 1940, there was a shortage of water for senior appropriators of water on the North Platte River and if the Tri State or Farmers Irrigation District had demanded the water accruing from the closure of junior rights in Wyoming, they (the Tri State) would have received it; that there is a serious question if the five appropriators in the State of Wyoming junior to the plaintiff and named in plaintiff's petition had been deprived of water by closure of their headgates in the month of August, 1940, whether plaintiff would have received any of it; that the demands of the Tri State and other senior appropriators in the State of Nebraska would probably have been greater in the year 1940 due to the fact that that year was subnormal in rainfall, and water shortage greater than the two preceding years; that since 1936 the State of Nebraska has not permitted any out of priority diversions of water from the North Platte River by the plaintiff.

The defendant, as a witness for himself, stated in part substantially that he opened the plaintiff's head-

gate once on August 5, 1941, upon plaintiff's request; that before that date he had never opened, closed, or regulated the plaintiff's headgate; that at that time the gate remained open 30 to 32 hours when the plaintiff District voluntarily shut its own gate saying nothing to witness about the matter; that at no time while the defendant has been Water Commissioner, during the years 1939 to 1941, has there been a shortage of water at plaintiff's headgate; that the average daily flow of water in the month of August, 1941, at the state line between the states of Wyoming and Nebraska in the North Platte River was 508 second feet, and plaintiff could take its full appropriation out of that water without objection from the defendant; that the defendant received a demand from plaintiff in 1940 for water and defendant was ready and willing to open plaintiff's headgate but did not because the plaintiff did not desire to have such headgate opened inasmuch as Nebraska has full control of the regulation of plaintiff's ditch; that the defendant was never notified by the Nebraska officials that if he closed the headgates of the appropriators in Wyoming, junior in right to the plaintiff District, the defendant would be permitted to open the plaintiff's headgate or that the Nebraska water officials would open the plaintiff's headgate if the defendant closed juniors in Wyoming.

It is urged for the plaintiff that the judgment of the District Court is contrary to the evidence in the cause and that the evidence is insufficient to sustain that judgment. In view of these contentions, we have set forth above more elaborately than otherwise would be required substantial abstracts of certain portions of the evidence in the case. It is also contended for the plaintiff District that the judgment questioned here is contrary to law. In view of these attacks upon the judgment, the following authorities are pertinent as we think:

The first sentence of Section 122-304 W. R. S. 1931 provides:

"Said water commissioner shall, as near as may be, divide, regulate and control the use of the water of all streams within his district by such closing or partial closing of the headgates as will prevent the waste of water, or its use in excess of the volume to which the appropriator is lawfully entitled." * * *

In 2 Wiel, Water Rights in the Western States (3d ed.), Section 1155, the author says that:

"To entitle the complaining party to relief against the distant use while not himself using the water on his land, and hence suffering no present damage, it must actually appear that the impairment of water supply by diversion for distant use will interfere with the use of the water by complainant on his land in the future, or will deteriorate the value and adaptability to full use of his land, or that a taking for distant use will interfere with his enjoyment of his rights in a watercourse."

The rule is stated in 32 C. J. 75-76, Section 61 that:

"An injunction will be refused * * * where for any reason it can be of no benefit to complainant * * *"'

The United States District Court for the District of Wyoming in Hagie v. Lincoln Land Company, 18 Fed. Supp. 637, has pointed out that:

"It would seem to be at least a reasonable principle to adopt in a construction of the statute, that the plaintiff should be required to prove that he would be benefited if defendant's appropriation were cut off."

See also Horsecreek Conservation District v. Lincoln Land Company, 54 Wyo. 320, 343 where this court applied this principle in a case involving the abandonment of water rights.

14 R. C. L. 355, Section 57 puts the rule in this form:

"It must appear, to the satisfaction of the court, that

such apprehension is well grounded, that is a reasonable probability that a real injury, for which there is no adequate remedy at law, will occur if the injunction be not granted. If it is doubtful or contingent equity will not interfere by injunction. * * *"

2 Kinney, on Irrigation and Water Rights (2d Ed.), 1377, Section 789 remarks that:

"So long as the prior appropriator obtains all the water of satisfactory quality to the full extent of his appropriation, he has no right to interfere with or complain of the enjoyment of the rights of subsequent appropriators on the stream." * * *

See also Clough v. Wing, 2 Ariz. 371, 17 Pac. 453; Albion-Idaho Land Company v. Naf Irrigation Company et al., 97 Fed. (2d) 439, 444.

It seems reasonably clear from an analysis of the testimony abstracted above and other evidence appearing in the record before us that it is far from established that if the defendant in the latter part of the irrigation seasons of the years 1940 and 1941 had closed the headgates of the appropriators from the North Platte River in Wyoming, junior in right to the plaintiff District, the latter would have received the water thus released. It will be observed that the Farmers Irrigation District with its headgates on the Tri State Canal approximately two miles on the river below that of the plaintiff, held a priority appropriation over the plaintiff District for some 905 cubic feet per second of time, and according to the witness, Willis, this had to be satisfied before the plaintiff could have any water diverted to its use. In this connection, it will be recalled that Mr. Willis stated that "if every senior canal to Mitchell demands their full amount of their needs, the Mitchell would not receive that water by closing the junior canals" in Wyoming.

The irrigation season of the year 1940 was subnormal in dryness and the year 1941 was apparently

equally so. Prior to these years the plaintiff evidently received all the water it needed. The effect of this subnormal condition was to increase the needs of all the appropriators on the North Platte River, prior as well as junior. The testimony of plaintiff's witness, the Engineer Meeker, substantiates these views. He also indicated that there was serious doubt that plaintiff would receive any water if the senior Nebraska rights were required to be satisfied. There were also a number of other priority rights over the plaintiff District in Nebraska as has been heretofore pointed out.

In the Sorensen case, supra, the Supreme Court of Nebraska definitely held that an irrigation district such as the plaintiff here, organized under the laws of Nebraska, and irrigating lands wholly within that state, was subject to the irrigation laws of said state regardless of the fact that the plaintiff's headgate and diversion works were located in the State of Wyoming. The position of the Mitchell Irrigation District, the defendant in that cause, plaintiff here, and the opinion regarding it announced by the court, is thus stated in the case last cited:

"Defendant also contends that, since its appropriation of water from the North Platte river was acquired by grant from the state of Wyoming and its diversion works, whereby water is taken from the North Platte river, are located in Wyoming, it is not subject to the jurisdiction of the state of Nebraska, and that the state has no power to regulate or control its use of the water as an irrigation district, or to control or administer the water which it thus takes from the North Platte river.

"We think the contention is unsound. * * * The fact that it takes water from the North Platte river just outside of the state of Nebraska and conducts it into the state does not justify the assumption that it is not subject to the control of the state as soon as the water is brought within its borders. It is the duty of the state, under the Constitution and laws, to see that the waters of the streams used for irrigation purposes are

not wasted; that the prior appropriators shall be protected as against subsequent appropriators, and in this instance it appears that there are a number of prior appropriators whose rights are superior to those of the defendant in the use of the waters of the North Platte river. These appropriators are all in Nebraska. Clearly, the state of Wyoming would have no authority to administer the waters, after they come into this state, and control their use." * * *

The practical effect of this decision was, of course, to bind the plaintiff District to obedience to the orders and directions of the Nebraska water officials, exactly as the Farmers Irrigation District and all other Nebraska appropriators of the water of the North Platte River are bound. Accordingly, the priority rights of the Nebraska appropriators from the North Platte River—and there were a number of them—which took precedence over the plaintiff District necessarily had to be met before the plaintiff could be supplied with water. The testimony of the witnesses reviewed above demonstrates very well, it seems to us, how this position in which plaintiff was placed operates. Although the evidence shows that ample water was passing plaintiff's headgate during the latter part of the irrigation seasons of 1940-41 to meet its appropriation, plaintiff District kept its headgate closed and did not take the water as the Nebraska water officials enforced such action on its part. It was through no fault of the defendant that the plaintiff did not appropriate this water. The plaintiff District prior to the year 1936 had evidently done just that very thing, viz., taken the water from the North Platte River as it deemed it necessary for use on its lands. The litigation in the Sorensen case wherein the plaintiff District was defendant, as we have seen, placed the plaintiff in a subordinate position as regards Nebraska appropriators with priority rights over the plaintiff to the waters of the North Platte River. The plaintiff District was to all intents and

purposes, from a practical standpoint at least, an appropriator of waters in the North Platte River in Nebraska over whom the defendant had no control whatsoever, and he could not at all function as directed by Section 122-304 W. R. S. 1931, supra.

We find that in Van Buskirk v. Red Buttes Land and Livestock Company, 24 Wyo. 183-195, 156 Pac. 1122, this court quotes from 3 Kinney on Irrigation and Water Rights (2d Ed.) Section 1345, to the effect that water commissioners "are, in fact, in the nature of water police, whose duties are to protect the rights of the lawful appropriators, and to arrest those who unlawfully infringe upon their rights." If that be so, it is clear that the Wyoming Water Commissioners cannot exercise the police power vested in them beyond state lines; Willey et al. v. Decker, 11 Wyo. 496-536, 73 Pac. 210. They cannot see to it that the use of water after it is diverted from a stream is applied in another state as the water laws of the state of Wyoming direct. If they could do so, it would, of course, be productive of intolerable confusion and conflict of authority.

There was therefore substantial evidence to support the judgment of the trial court in declining to issue the mandatory injunction sought against the defendant. It is not necessary to cite authorities other than above set forth to the point that where the plaintiff would not be aided or benefited thereby, an injunction should not be issued and we think the District court had a right to conclude from the evidence before it that it would be useless to issue the writ.

Attention is directed in behalf of the plaintiff to the "Memo" under date of August 3, 1940, and quoted above. It appears to have been framed at a meeting of the officials of the plaintiff and those of the Farmers Irrigation District. That "Memo" seems to contemplate an arrangement whereby if the plaintiff was successful in closing the five Wyoming canals mentioned

in plaintiff's petition herein, the Farmers Irrigation District would permit the plaintiff to use the additional water thus obtained. It may not be overlooked, however, that this "Memo" was unsigned, was without consideration, and subject to termination by the Farmers Irrigation District upon twenty-four hours notice to the Nebraska water officials that the Farmers Irrigation District no longer desired to abide by the arrangement. Evidently this arrangement was regarded by the Farmers Irrigation District, at least, as of not much consequence, for we find in August of 1941 when shortage of water occurred in that irrigation season on the North Platte River, that when plaintiff procured the defendant to open its headgate, the plaintiff District was required by the Nebraska water officials to close it immediately and did so—evidently for the benefit of senior Nebraska appropriators of which, of course, the Farmers Irrigation District was one. The written "Memo" apparently was considered to be binding on no one. It certainly could not affect the Nebraska appropriators holding priority rights over the plaintiff who were not even mentioned in the writing.

The trial court considered that the defendant was merely a nominal party to this litigation, and that the owners of the five canals in Wyoming, which plaintiff by this suit sought to have the defendant close, were indispensable parties to the litigation. Plaintiff relies on the abstract right of priority of appropriation vested in it over such owners. But the evidence in this case injects other important elements which a court of equity was bound to consider before granting the relief for which the plaintiff District prayed. These elements have been discussed hereinabove. It is inconceivable that such owners should be deprived of the water for their crops simply to uphold the naked right of priority for the plaintiff when it was extremely doubtful, to say the least, that if the junior appropriators' canals were

closed, the water thus released would have benefited the plaintiff. Besides, there was ample water passing the plaintiff's headgate to meet its priority in Wyoming and which it did not take. Certainly before depriving the juniors in Wyoming of water, they should have their day in court and be permitted to make any defense which they might have to plaintiff's claims. The following authorities support this view:

In Humboldt Land and Cattle Company v. Allen, State Engineer, 14 Fed. (2d) 650, a case decided in the United States District Court for the State of Nevada, three judges sitting, we find it stated that:

"The water officials are nominal parties only, but the plaintiff, from whom the water was taken, and those who are now consuming it, are the real parties in interest. Without the latter there can be no complete determination of the controversy. A restraining order as prayed for could not be granted without prejudice to such consumers. This court cannot by its injunctive orders, though they are directed to state officials, effect a transfer of water from one consumer to another without giving both consumers a hearing; and this we think is true, even though in making the transfer the officials are directed to conform to an order of determination on file in the office of the county clerk pending a hearing thereon by the district court of Nevada. McLean v. Farmers' High Line Canal & Reservoir Co., 44 Colo. 184, 98 P. 16, 18; Hamp v. State, 19 Wyo. 377, 118 P. 653, 662; Comstock v. Larimer & Weld Reservoir Co., 58 Colo. 186, 145 P. 700, 703, Ann. Cas. 1916A, 416; Squire v. Livezey, 36 Colo. 302, 85 P. 181."

This decision was affirmed, 274 U. S. 711, 47 S. Ct. 574, 71 L. Ed. 1314.

3 Kinney on Irrigation and Water Rights (2d Ed.) 2984 states that:

"In a suit to enjoin a water commissioner from diverting water in a stream from the use of prior appropriators to the use of subsequent appropriators, the

subsequent appropriators being the persons really interested, are necessary parties, and their absence is fatal to the validity of the decree."

Also in 2 Weil, Water Rights in the Western States (3d Ed.) Section 1196, it is said:

"In an action to enjoin a water commissioner from diverting water from a stream, the persons for whose benefit it is diverted are necessary parties. * * *"

In Terrace Irrigation District v. Neff, 92 Colo. 278, 19 Pac. (2d) 754, the court uses this language:

"The rule which we think is controlling is well stated in McLean v. Farmers' High Line Canal & Reservoir Co., 44 Colo. 184, 98 P. 16, 20, from which we quote the following: 'It is doubtless true,' the court said, 'that water officials must distribute the waters of a district or division according to adjudicated priorities, but, when they are avowedly attempting to do so, as it is made to appear from the pleadings in this case, their action cannot be interfered with either by interlocutory order or final judgment, unless the real parties in interest are parties to the action.' See, also, Squire v. Livezey, 36 Colo. 302, 85 P. 181; Long on Irrigation (2d Ed.), § 265; 2 Wiel Water Rights (3d Ed.), § 1196."

In the instant case we think the defendant Whiting was doing what was required of him in regulating water rights in Wyoming. He allowed sufficient water to reach plaintiff's headgate, to supply its prior appropriation at all times, and he did not close Wyoming canals junior to plaintiff in priority as the plaintiff District was not taking the water which came to its headgate. It was his duty under Section 122-304 W. R. S. 1931, to prevent a waste of water in this state. By closing the junior canals in Wyoming, the effect would have been, as we have seen, to injure the holders of rights inferior to plaintiff, and the plaintiff would probably have received no benefit whatsoever. The water would have been wasted as far as Wyoming appropria-

tors were concerned, and they would have been deprived of water to no purpose. The defendant had no authority to control water or right to act concerning its use beyond the Wyoming state line. Ex rel. Sorensen v. Mitchell Irrigation District, supra; Willey et al. v. Decker et al., supra. See also Garner v. Anderson, 67 Utah 553, 248 Pac. 496; McLean, Water Commissioner v. Farmers High Line Canal & Reservoir Company, 44 Colo. 184, 98 Pac. 16; Squires, Water Commissioner v. Livezey, 36 Colo. 302, 85 Pac. 181.

Many criticisms by the plaintiff's brief and argument have been leveled at the findings of fact and conclusions of law filed by the trial court in this suit. All the evidence on the trial of the cause below has been brought here by the record before us. In the case of Thex v. Shreve, 38 Wyo. 285, 267 Pac. 92, this court following its prior decisions said:

"The trial judge, on request therefor, made separate findings of his conclusions of fact and of law, and the defendants object to many of the findings. We need not discuss in detail these objections. The defendants complain that the judgment is not sustained by sufficient evidence, and have included in the record on appeal all the evidence produced at the trial. In such a case the review here must be upon the whole record, which takes the place of the particular findings, and an error in a finding will not require a reversal of the judgment, unless it appears that the complaining party was prejudiced. Hilliard v. Douglas Oil Fields, 20 Wyo. 201, 214, 122 Pac. 626; Sewall v. McGovern, 29 Wyo. 62, 73-74, 211 Pac. 96."

We do not consider that the plaintiff was prejudiced by what was done by the District Court of Goshen County in making these findings of fact and conclusions of law.

Before concluding this opinion, already an extended one, we cannot refrain from referring to the case State of Washington v. State of Oregon, 297 U. S. 517, 56 S.

Ct. 540, 80 L. Ed. 837. That was an original suit in the court of last resort of the nation by the State of Washington against the State of Oregon seeking an injunction to close the ditches of Oregon appropriators of the waters of the Walla Walla River, who were junior in point of time to appropriators from the same stream in the plaintiff state. The master to whom the cause was referred received evidence submitted by the parties and tendered a report adverse to the maintenance of the bill of complaint. In affirming this conclusion and dismissing the suit on its merits, the court speaking through Mr. Justice Cardozo quoted the master's findings as follows:

"The master has found: 'There is no satisfactory proof that to turn down water past the Red Bridge in Oregon during the period of water shortage would be materially more advantageous to Washintgon users than to permit such water to be applied to surface irrigation in Oregon.' and that 'To limit the long-established use in Oregon would materially injure Oregon users without a compensating benefit to Washington users.'"

Then this was said:

"These findings are well supported by the evidence. Complainant has brought forward no adequate reason for disturbing them. Connecticut v. Massachusetts, supra, 282 U. S. 660, at page 669, 51 S. Ct. 286, 75 L. Ed. 602. Accepting them, as we do, we accept also the conclusion to which they point with inescapable directness. To restrain the diversion at the bridge would bring distress and even ruin to a long-established settlement of tillers of the soil for no other or better purpose than to vindicate a barren right. This is not the high equity that moves the conscience of the court in giving judgment between states." (Citing cases.)

The analogy between that case and the case at bar is reasonably apparent. Here plaintiff's own witnesses stated, as repeatedly recited above, that if the junior

appropriators of the North Platte water were closed on behalf of the plaintiff, the plaintiff District would very likely not receive any benefit whatsoever therefrom. The crops of Wyoming appropriators, junior in right to the plaintiff, would be injured to no purpose.

Additionally, it would seem from the tabulated evidence as we understand it and plaintiff's pleadings submitted in the record before us, there is serious question if there was not laches on the part of the plaintiff in preferring its claims against the junior appropriators in Wyoming, as the decision last above cited held there was on the part of the Washington claimants of water against junior Oregon water users. The latest junior priority of the Wyoming appropriators attacked, appears to be under date of January 3, 1910, and it may well be open to grave question whether such juniors should be deprived of their seasonal water after more than 30 years use of their right without challenge. It is unnecessary to determine this point, however, until raised between the plaintiff and the owners of the junior rights. It is mentioned simply to show how imperative it was to have the junior Wyoming appropriators given their day in court before the water should be shut off from their ditches.

Other questions have been argued by the parties as arising upon the record in this case, but enough has been said as we think to dispose of the cause.

The judgment of the District Court of Goshen County is accordingly affirmed.

*Affirmed.*

KIMBALL, Ch. J., and BLUME, J., concur.