**PLATTE COUNTY GRAZING ASSOCIATION and the City of Casper, Natrona County, Wyoming, through its duly constituted Board of Public Utilities, Petitioners,**

v.

**STATE BOARD OF CONTROL, Lonesome Fox Corporation, S & S Ranch Company, a partnership, Respondents,**

**Double K Ranch, Inc., and Noel Hall Ranch Company (Petitioners-Contestants below).**

No. 83–123.

Supreme Court of Wyoming.

Jan. 16, 1984.

Rehearing Denied Feb. 2, 1984.

Glenn Parker and W. Douglas Hickey of Hirst & Applegate, Cheyenne, for petitioners.

A.G. McClintock, Atty. Gen., Lawrence J. Wolfe, Senior Asst. Atty. Gen., John D. Erdmann, Asst. Atty. Gen., James M. Ellerbe, Legal Intern, Cheyenne, for respondent State Bd. of Control.

Hugh B. McFadden, Jr. and Philip Nicholas of Corthell, King, McFadden, Nicholas, Prehoda & Olson, Laramie, for respondents Lonesome Fox Corp. and S & S Ranch Co.

Before ROONEY, C.J., and THOMAS, ROSE, BROWN and CARDINE, JJ.

ROSE, Justice.

This case comes to this court from a petition for judicial review of administrative action, pursuant to § 16–3–114, W.S. 1977 (1982 Replacement) and Rule 12, W.R.A.P. (more specifically Rule 12.09, W.R.A.P.,[1] effective June 13, 1983).

The petition for judicial review contemplates two decisions of the State Board of

Control. The only issue with which we need be concerned has to do with a petition for and an order of declaration of partial abandonment of water rights. The petition was filed with the State Board of Control by respondents Lonesome Fox Corporation and S & S Ranch Company and was later joined by Double K Ranch, Inc. and Noel Hall Ranch Company. These ranch companies irrigate their lands from Rock Creek and Three Mile Creek in the vicinity of the town of Rock River, in Albany County. The contested water rights are attached to other nearby lands in the Rock Creek drainage area—which lands and water rights are owned by the Platte County Grazing Association but which are in the process of being purchased by the Board of Public Utilities for the City of Casper. Both the Platte County Grazing Association and the Board of Public Utilities for the City of Casper appear here as petitioners.

A public hearing on the abandonment petition was held, the result of which was that the Board of Control declared abandoned 2,358.88 acres having original supply and 126.2 acres having supplemental supply, leaving 2,126.65 acres having original supply and 108.8 acres having supplemental supply as not abandoned.

The contestants-respondents, whose water rights are junior to those of contestees-petitioners, urge that they have standing to bring the abandonment action against the senior water rights of the petitioners pursuant to § 41–3–401(b), W.S. 1977, which provides:

"When any water user who might be affected by a declaration of abandonment of existing water rights, desires to bring about a legal declaration of abandonment, he shall present his case in writing to the state board of control. * * * *"

It is the respondents' position that they would be "affected" by a declaration of abandonment for the reason that an aban-

---

**1.** Rule 12.09, W.R.A.P. provides in pertinent part:

"If * * * the district court concludes the matter to be appropriate for determination by the

Supreme Court, the district court may certify the case to the Supreme Court."

donment of the petitioners' water rights would have the effect of

"* * * improv[ing] the security and availability of their [the respondents'] water supplies, thereby giving them more water during their irrigation season or by extending the time their water would be available."[2]

In the Conclusions of Law section of its order, the Board of Control found—without giving reasons—

"THAT the Contestants have standing to seek a declaration of abandonment against the Contestee."

The contestants' only complaint for abandonment is that the Grazing Association and the Board of Public Utilities have not used their appropriated water for five successive years, as contemplated by § 41–3–401(a), W.S.1977[3] and have not complied with the terms of their permits in that, instead of applying one cfs per 70 acres to *all* of the lands included in by their water authorities, the contestees are applying and have historically applied two cfs to *one-half* of the land described in those authorities. Without alleging or proving that this utilization in any manner abridges *their* water rights, the contestants urge that they are "affected" water users under the condemnation statute because they would be benefited by an abandonment order.

 It is to be carefully noted that the contestants do not even suggest by allegation or proof that the contestees' historic use or proposed use of their water rights has abridged or will in any way abridge the water rights of the contestants. The contestants only allege that contestees are not complying with the provisions of *their* appropriations and that this, together with an allegation and showing that contestants' water rights will be *enhanced* by abandon-

ment, is sufficient to establish standing to bring the action. We cannot agree.

We will reverse.

Typical of the benefits upon which the contestants rely to become water users who will be "affected by a declaration of abandonment" (§ 41–3–401(b), supra) are those described in the following excerpts from the record which have been collected in the brief of contestant-respondent Lonesome Fox Corporation, as follows:

"The various Contestants testified as well. Their respective ownership of lands with appurtenant rights out of Rock Creek and Three Mile Creek was not challenged. Each testified about the effect of the hoped-for partial abandonment upon his respective operation:

"Clifford B. White, testifying for Lonesome Fox Corporation:

" 'Q. If all or part of this partial abandonment is granted, what is going to happen to your water rights?

" 'A. It will make our water rights that much better.

" 'Q. In what way?

" 'A. In that there will not be whatever, X number of feet are abandoned, it will move our water rights that much farther up in priority, generally allowing us to irrigate for a longer period of time during the season.

· * * * * * *

" 'A. The longer we irrigate, the more grass we can grow. The only product or the only crop that we grow on our land is grass, and the more grass we raise the more cattle we can run.'

"Kim Krueger, for Double K Ranches, Incorporated:

" 'A. ... when the water is available I get it over the pasture land at the same time that I get it over the irriga-

---

2. From the brief of the respondent State Board of Control.

3. Section 41–3–401(a), W.S.1977 provides:
"Where the holder of an appropriation of water from a surface, underground or reservoir water source fails, either intentionally or unintentionally, to use the water therefrom

for the beneficial purposes for which it was appropriated, whether under an adjudicated or unadjudicated right, during any five (5) successive years, he is considered as having abandoned the water right and shall forfeit all water rights and privileges appurtenant thereto." (Emphasis added.)

tion land, because it's not there that long.

" 'Q. Do you turn it on later in the fall?

" 'A. Try to turn it on later in the fall. In the past, oh, 20 years, I guess I can only remember maybe twice out of that 20 years that we have been able to do any fall irrigation, but I like to, if there's water available at the time.

\* \* \* \* \* \*

" 'A. Well, to be quite honest with you, if some of the rights that are senior to mine are abandoned, I would end up with more water.'

"And, on cross-examination:

" 'Q. In fact, if you had the water for a longer period of time, you'd get more acreage irrigated?

" 'A. I'd have a chance to put more out and get more of it spread more intensely on some of the places that I can't now, yes.'

"Scott Sims, for S & S Ranch Company:

" 'A. If abandonment is granted, it would mean that our water rights will be more valuable to us because we will have longer use period of this water during the irrigation season.

" 'Q. Which end of the season will you have water use?

" 'A. I would say on both ends, probably on the latter end mostly when we would use it the most.

" 'Q. Please tell the Board if this would be of value to you.

" 'A. Yes, it would. Usually, the last ten days of irrigation season is the, whenever your hay crop will give you the most productivity, and some years, in a short water year, when we don't have enough water to bring that hay to its fullest capacity, you notice a reduction in the quantity of hay that we put up.'

"And, cross-examination:

" 'Q. In your opinion, why isn't your supply adequate?

" 'A. As I say, we're in the business of growing hay and grass to be marketed for livestock and we sell hay, and it's a source of income to use and if we have a longer use period of this water, means more grass and hay to us.

" 'Q. And more money to S & S Ranch Company?

" 'A. Yes.'

"And finally, Leola Hall for Noel Hall Ranch Company:

" 'Q. Should the partial abandonment sought here be granted, what would be the effect in your operation, if any?

" 'A. Well, I would assume, as several others have stated, that there would be a longer irrigation season and also, hopefully, that water would stay in the creek, the creek wouldn't dry up—

\* \* \* \* \* \*

" 'A. Well, I would imagine the longer you have the water on the better your hay is going to be, and you could probably irrigate, spread it on out to some of your range land.' "

In summing up the position of the contestants, and having asserted that they rely upon the five-year provision of § 41–3–401(a), supra, and subsection (b) of that statute, supra, which latter section describes the rights of an "affected" water user, the author of the contestants' brief says:

"The logic of our case is this: PCGA/CBPU [4] is the holder of appropriations from surface and reservoir sources. They have failed to use the water therefrom for 'the beneficial purposes for which it was appropriated' for the years 1977 through 1981. Therefore they have abandoned these rights. All Contestants are water users who will be affected (will in fact benefit) from a declaration of the abandonment of these existing water rights."

---

**4.** These initials stand for Platte County Grazing Association and Casper Board of Public Utilities.

We have recently decided *Cremer v. State Board of Control,* Wyo., 675 P.2d 250 (1984) in which we carefully considered the ramifications of § 41–3–401(b), supra. That statute says that in order to establish standing to bring an abandonment proceeding the petitioner must be able to show that he is a "water user who might be *affected* by a declaration of abandonment." (Emphasis added.) In deciding what the word "affected" means, we revisited *Mitchell Irr. Dist. v. Whiting,* 59 Wyo. 52, 136 P.2d 502 (1943), where we had long ago held that a prior appropriator cannot interfere with the rights of a junior appropriator so long as the senior receives all the water to which his appropriation entitles him. In Mitchell, we said:

> "2 Kinney on Irrigation and Water Rights, 2d Ed., 1377, Section 789 remarks that: 'So long as the prior appropriator obtains all the water of satisfactory quality to the full extent of his appropriation, he has no right to interfer with or complain of the enjoyment of the rights of subsequent appropriators on the stream.' * * * See, also, *Clough v. Wing,* 2 Ariz. 371, 17 P. 453; *Albion-Idaho Land Company v. Naf Irrigation Company et al.,* 10 Cir., 97 F.2d 439, 444." 136 P.2d at 508.

For all the same reasons that a senior water rights appropriator who is receiving all the water to which his rights entitle him does not have standing to bring abandonment against a junior appropriator (because he cannot show that he is "affected" by the junior's use of the water), a junior appropriator, whose rights stand unabridged by a senior appropriator's *unauthorized* use of his water, does not have standing to bring abandonment against such a senior appropriator. The mere unauthorized use or misuse of water does not give another appropriator standing to complain. The use or misuse against which complaint is lodged must also be shown to be adversely affecting the water rights of the complaining appropriator before standing can be said to attach.

When contemplating the meaning of § 41–3–401(b), supra, we held in the Cremer case that "affected" means *adversely* affected—*injured*—it connotes a use which results in an *abridgment* of the contestant's water rights as compared to an enhancement of those rights. We said that in order that a user be "affected" so as to have standing to bring abandonment, the complaining user must be able to show that the contestee is utilizing his water to the *disadvantage* of the water rights of the contestant.

In reaching these conclusions we were merely summarizing and reiterating old and familiar rules of this court as well as rules of other courts which have been considered with approval. See *Hagie v. Lincoln Land Co.,* D.C.Wyo., 18 F.Supp. 637, 639 (1937); *Mitchell v. Whiting,* supra; *Campbell v. Wyoming Development Co.,* 55 Wyo. 347, 100 P.2d 124, reh. denied 102 P.2d 745 (1940); *Horse Creek Conservation Dist. v. Lincoln Land Co.,* 54 Wyo. 320, 342–343, 92 P.2d 572 (1939).

We summarized our holding in *Cremer,* when we said:

> "We therefore reiterate the historic rule (which is nothing more than the law of standing applied to water users in an abandonment proceeding) that an appropriator's rights are not 'affected' for the purpose of bringing condemnation unless those rights are changed to his disadvantage. In other words, he has to be able to show *injury.* A water user may not bootstrap standing for the purpose of bringing abandonment of his neighbor's water rights when the only effect of the abandonment would be to enlarge the contestant's appropriation as distinguished from protecting his right to use his previously appropriated water." 675 P.2d at 256.

The injury factor is, then, the jurisdictional requirement which must be present before one water user may bring an abandonment petition against the water rights of others. The complainant must, in order to vest appropriate boards and courts with jurisdiction to hear his petition, be able to

allege and prove that his water right has been injured—i.e., abridged by the use or misuse that the contestee makes of the water in which the contestant has a protective interest.

This concept was reiterated in our relatively recent decision in *Budd v. Bishop*, Wyo., 543 P.2d 368, 373 (1975). In that case, we were considering whether or not a post-1945[5] surplus water appropriator possessed standing to contest the constitutionality of the surplus water law. In holding that he did not have standing for various reasons not relevant here, we went on to observe that the contestant would be possessed of standing to bring abandonment if he could show that the wrongful use of water by other appropriators on the stream was injuring his rightful access to the water. In this connection, we said:

> " * * * If, in fact, Budd's post-March 1, 1945 right is being limited because prior appropriators are wasting water, the law in Wyoming affords him the opportunity to challenge those prior water rights. The water right of any appropriator is limited to beneficial use, and, even though a larger amount of water has been adjudicated, the water right is subject to reduction if not applied for beneficial purposes." 543 P.2d at 373.

■ When the injury requirement is considered within the context of the pleadings and proof in the case at bar, it becomes clear that the contestants have not shown that they have standing to complain in abandonment, the consequence of which is that the appropriate board and courts have no jurisdiction to entertain the petition.

Reversed.