2010 WY 98

**Joe and Tammy K. GERINGER, Husband and Wife, Appellants (Petitioners),**

v.

**Mark D. RUNYAN and Sharon K. Runyan, Husband and Wife, and Robert Willson and Jana Willson, Husband and Wife, Appellees (Respondents).**

No. S–09–0122.

Supreme Court of Wyoming.

July 14, 2010.

Representing Appellants: Daniel B. Frank, Frank Law Office, P.C., Cheyenne, Wyoming.

Representing Appellees: J. Mark Stewart of Davis & Cannon, LLP, Cheyenne, Wyoming.

Before KITE, C.J., and GOLDEN, HILL, VOIGT,* and BURKE, JJ.

GOLDEN, Justice.

[¶ 1] Joe and Tammy Geringer filed petitions with the Wyoming State Board of Control (Board) for the involuntary abandonment of water rights Mark and Sharon Runyan and Robert and Jana Willson (herein referred to collectively as Appellees) hold on lands that were formerly in common ownership with lands on which the Geringers hold water rights. Following a hearing, the Board denied the Geringers' petitions, finding the Geringers lacked standing to pursue the petitions for abandonment. The Geringers appealed to the district court, which affirmed the Board's ruling. We also affirm.

## ISSUE

[¶ 2] The Geringers present the following issue for review by this Court:

Did the Board of Control err when it held that the Geringers lack standing under the third element of the Wyo. Stat. § 41–3–401 requirements for standing by its determination that the Geringers were seeking to *enlarge* their water right rather than using the Runyans' and Willsons' undiverted water to *fulfill* the Geringer right?

* *Chief Justice at time of oral argument.*

## FACTS

[¶ 3] The following pertinent facts are undisputed. All parties to this appeal acquired real property through a common grantor. The Geringers own the largest amount of acreage and engage in farming activities. The Geringers' irrigation water for their crops comes from a surface supply and several underground wells providing additional supply water.[1] It is two of the wells providing additional supply water that are at issue. One well is commonly referred to as the Leonard No. 1 Well. The Leonard No. 1 Well is adjudicated to provide additional supply water to lands owned by the Geringers and also lands owned by the Runyans. The second well is commonly referred to as the Chambers No. 2 Well. The Chambers No. 2 Well is adjudicated to provide additional supply water to lands owned by the Geringers and also land owned by the Willsons.

[¶ 4] In irrigating their crops, the Geringers employ a pivot irrigation system comprised of two pivots. In order to run both pivots at the same time, the Geringers require the full water flow produced by both the Leonard No. 1 Well and the Chambers No. 2 Well. The ability of the Geringers to operate both pivots simultaneously thus depends on the nonuse of well water by the Appellees concurrently with the Geringers' irrigation.

[¶ 5] In order to protect their unfettered ability to simultaneously operate both pivots, the Geringers filed petitions with the Board seeking declarations of abandonment of the respective additional supply water rights of Appellees.[2] The Geringers did not allege or present any evidence suggesting the water supply in the underlying aquifer is limited. Rather, they proceeded under the theory that the amount of water available to them under their additional supply water right is determined by the adjudicated flow rate of the respective wells. They concluded the water available to them under their right, therefore, is limited by the use of Appellees

of water from the same wells. Thus, the Geringers argued they would benefit from a declaration of abandonment of the respective additional supply water rights of Appellees because they will then have unfettered use of their pivot irrigation system. Conversely, the Geringers argued they would be injured if the respective water rights of Appellees are not declared abandoned because they will not be able to run their pivot irrigation system at the same time Appellees withdraw water from the respective wells.

[¶ 6] After a hearing, the Board denied the Geringers' petitions. The Board determined that the Geringers lacked standing to bring the petitions because they could not show they had an adequate personal stake in a declaration of abandonment. The Board rejected the Geringers' argument that their water supply was limited by the flow rate of the respective wells. Rather, the Board concluded the water supply was determined by the amount of water available in the aquifer. The Board held that the Geringers "failed to show that the source of supply available for the wells at issue is limited." Because there was no evidence suggesting that the water available in the aquifer was limited, the use by Appellees of their additional supply water rights did not impact the Geringers' use of their additional supply water rights in a legally cognizable manner. Consequently, the Board found the Geringers lacked standing.

[¶ 7] The Geringers appealed the Board's order to the district court, which upheld the order. The Geringers then brought this appeal.

## STANDARD OF REVIEW

 [¶ 8] This Court reviews administrative actions pursuant to the Wyoming Administrative Procedures Act. *See* Wyo. Stat. Ann. § 16-3-114 (LexisNexis 2009). In this appeal, we find the dispositive issue to be an issue of law. We do not defer to the Board's determination on issues of law, but rather

---

1. "Additional supply" is statutorily defined as "underground water for irrigation use which is appurtenant to lands that have a direct flow supply of surface water or have an original supply from another underground water source."

Wyo. Stat. Ann. § 41-3-901(a)(vii) (LexisNexis 2009).

2. The Geringers filed two separate petitions. The petitions were consolidated by the Board.

review such issues de novo. *Three Sons, LLC v. Wyoming Occupational Health & Safety Comm'n*, 2007 WY 93, ¶ 11, 160 P.3d 58, 62–63 (Wyo.2007); *Pine Bar Ranch, LLC v. Luther*, 2007 WY 35, ¶ 8, 152 P.3d 1062, 1065 (Wyo.2007).

## DISCUSSION

■ [¶ 9] The abandonment of a water right is governed by Wyo. Stat. Ann. § 41–3–401 (LexisNexis 2009), which provides in part:

> (a) Where the holder of an appropriation of water from a surface, underground or reservoir water source fails, either intentionally or unintentionally, to use the water therefrom for the beneficial purposes for which it was appropriated, whether under an adjudicated or unadjudicated right, during any five (5) successive years, he is considered as having abandoned the water right and shall forfeit all water rights and privileges appurtenant thereto....
>
> (b) When any water user who might be benefitted by a declaration of abandonment of existing water rights or who might be injured by the reactivation of the water right, desires to bring about a legal declaration of abandonment, he shall present his case in writing to the state board of control.... The following persons have standing to petition the state board of control to declare the abandonment of existing water rights under this section:
>
> > (i) Any person who has a valid adjudicated water right or is the holder of a valid permit from the same source of supply which is equal to or junior in date of priority to the right for which abandonment is sought[.]

■ [¶ 10] We have construed § 41–3–401(b) to require that, in order to have standing to petition for abandonment, a water user must allege and prove three essential elements: 1) that he possesses a valid water right of equal or junior status to the water right sought to be abandoned; 2) that the water right relied upon by the petitioner and the water right for which a declaration of abandonment is sought are from the same source of supply; and 3) that the petitioner stands to benefit from a declaration of aban-

donment or to sustain injury by reactivation of the contested water right. *Snider v. Kirchhefer*, 2005 WY 71, ¶ 11, 115 P.3d 1, 5 (Wyo.2005); *Schulthess v. Carollo*, 832 P.2d 552, 557 (Wyo.1992). All parties correctly agree that the first two elements of the standing analysis are met. At issue in this appeal, therefore, is the third element.

■ [¶ 11] With regard to establishing a benefit or injury from a decision on a declaration of abandonment, this Court has stated:

> In a long line of cases, we have repeatedly held that the petitioner must show he had a water right that would be affected in some discernible manner by the declaration of abandonment. *Laramie Rivers Co. v. Wheatland Irrig. Dist.*, 708 P.2d 20 (Wyo.1985); *State Board of Land Commissioners v. Lonesome Fox Corp.*, 707 P.2d 167 (Wyo.1985); *Platte County Grazing Ass'n v. State Board of Control*, 675 P.2d 1279 (Wyo.1984); *Cremer v. State Board of Control*, 675 P.2d 250 (Wyo.1984); *Michell [Mitchell] Irrig. Dist. v. Whiting*, 59 Wyo. 52, 136 P.2d 502 (1943); *Horse Creek Conservation Dist. v. Lincoln Land Co.*, 54 Wyo. 320, 92 P.2d 572 (1939). *See also Hagie v. Lincoln Land Co.*, 18 F.Supp. 637 (D.Wyo.1937). The foregoing cases suggest that the petitioner can show benefit sufficient to establish standing if it can show that the exercise of its water right might be facilitated by the abandonment, or changed to its advantage, in the sense that it would be enabled to make use of water that would not otherwise be available if there is no abandonment.

*Joe Johnson Co. v. Wyoming State Bd. of Control*, 857 P.2d 312, 316–17 (Wyo.1993). The first step in determining if the Geringers need and would have more water available to them to fulfill their existing water right is to determine the nature of their right. At issue is an additional supply water right. An additional supply water right confers upon the holder the right to use the amount of water necessary for beneficial irrigation purposes. Wyo. Stat. Ann. § 41–3–901(a)(vii) (LexisNexis 2009).

■ [¶ 12] The first question concerns the amount of water necessary to fulfill the

Geringers' additional supply rights. In their express issue on appeal, the Geringers challenge a finding of fact by the Board that, in taking the full water flow from the wells at issue, they were taking an amount of water in excess of their additional supply water rights. The Board found the excess amount of water was being obtained by invading the amount of water appropriated to Appellees. The result, according to the Board, is that, in seeking the declarations of abandonment of the Appellees additional supply water rights, the Geringers are attempting to enlarge their own additional supply water rights. Such action amounts to a taking by adverse possession, which is not allowed under Wyoming law.[3]

[¶ 13] The Geringers argue the factual finding lacks an evidentiary basis. We agree. The amount of water available under an additional supply water right is the amount of water necessary for the beneficial consumptive use of crops. The Board made no finding, nor was any evidence presented, as to the amount of water the Geringers needed for the beneficial irrigation of their crops.

[¶ 14] We disagree with the Geringers, however, that this factual finding is the determinative reason for the ultimate legal conclusion of the Board that the Geringers will neither benefit from, or be injured by, a decision regarding abandonment of Appellees additional supply water rights. As already stated, the ultimate legal conclusion of the Board was that the Geringers lacked standing because they failed to prove the supply of water to the wells at issue (the underlying aquifer) is limited. Again, the Geringers respond by arguing the supply of water is limited, not by the amount of water in the aquifer, but rather by the flow rate of the respective wells. Whenever the Appellees access water being pumped from the wells the flow rate, and thus the amount of water, concurrently available to the Geringers is diminished. The most obvious result, as the facts currently stand, is that the Geringers would be unable to run their pivot irrigation system during such times. This leads to the direct conclusion by the Geringers that their additional supply water rights are impacted by use of Appellees of water from the same wells. Under the circumstances of this case, this clash sets up a purely legal question.

[¶ 15] We agree with the Board that the ability of the Geringers to fully exploit their additional supply water rights is based on the amount of water in the underlying aquifer. The Geringers' argument that the amount of available water is limited by the well flow rate with which the water can be delivered is misplaced. The argument confuses the full amount of water available as additional supply water with the means individually adopted to transport the water to crops. An injury to a pattern of use of water is not the same as an injury to a water right. *State, Bd. of Land Comm'rs v. Lonesome Fox Corp.,* 707 P.2d 167, 171–72 (Wyo.1985).

[¶ 16] An additional supply water right is a right to use water for a specific purpose—irrigation. The key to the right as applies to this case is whether there is enough water available to the Geringers to adequately irrigate crops. No evidence was introduced that the amount of water available for irrigation purposes is limited. The evidence, instead, was only that the flow rate of the well affects the Geringers' ability to fully employ their pivot irrigation system. However, an additional supply water right does not include a right to use the water in a specific manner. Thus, maintaining the flow rate of water necessary to operate the Geringers' pivot irrigation system is not the type of benefit or detriment inuring to the Geringers as to confer legal standing to seek a declaration of abandonment of the Appellees' additional supply water rights.

## CONCLUSION

[¶ 17] While we disagree with certain factual findings of the Board, we agree with the result. The ability of the Geringers to use their pivot irrigation system is not part of their additional supply water right. Rather, the critical factor in the analysis of the in-

---

**3.** *See Lewis v. State Bd. of Control,* 699 P.2d 822, 824 (Wyo.1985) ("water rights may not be ac- quired by adverse possession or prescription in this state").

stant applications for abandonment is the amount of water available in the aquifer. Because no limit to the water supply in the aquifer was shown, the Geringers have nothing to gain by a declaration of abandonment of the respective additional supply water rights of Appellees. The determination of the Board that the Geringers lack standing to bring the instant petitions for abandonment is affirmed.