THE HOME INSURANCE COMPANY, A CORPORATION, PLAINTIFF AND RESPONDENT, *v.* PINSKI BROS., INC., A CORPORATION, ET AL., AND KENNETH K. KNIGHT AND A. ANDREW VAN TEYLINGEN, CO-PARTNERS, DOING BUSINESS AS KNIGHT & VAN TEYLINGEN, DEFENDANTS AND APPELLANTS.

KENNETH K. KNIGHT, COUNTERCLAIMANT AND APPELLANT, *v.* THE HOME INDEMNITY COMPANY, A CORPORATION, INVOLUNTARY PLAINTIFF AND DEFENDANT TO COUNTERCLAIM AND RESPONDENT.

No. 11869.
Submitted Nov. 12, 1970.
Decided Jan. 4, 1971.
479 P.2d 275.

Jardine, Stephenson, Blewett, Weaver and Jack L. Lewis,

248

Jack L. Lewis argued, Scott & Linnell, Wayne E. Linnell argued, Great Falls, for appellants.

Hughes & Bennett, Loble, Picotte & Loble, Alan F. Cain argued, Helena, Alexander, Kuenning & Hall, John C. Hall argued, Smith, Emmons & Baillie, Church, Harris, Johnson & Williams, Great Falls, for respondents.

MR. JUSTICE HASWELL delivered the Opinion of the Court.

Action by subrogated insurer of property damage loss against the architects and mechanical contractor whose negligence allegedly caused such loss. One of the architects counterclaimed against his liability insurer seeking to establish insurance coverage with a duty to pay and defend. From a summary judgment for insurer that the architects' liability policy did not provide coverage and dismissal of the architect's defense and counterclaim based thereon, the architects appeal.

A single issue is determinative of this appeal: Does the comprehensive liability policy of the architects insure them for the liability claimed in the subrogated insurer's complaint against them? We hold that it does as to Count I in the complaint in the present posture of the case; and that it does not as to Counts II and III of the complaint.

Plaintiff in the original action is The Home Insurance Company who allegedly paid off a property damage loss of approximately $135,000 resulting from a boiler explosion at the old Montana Deaconess Hospital in Great Falls and claims subrogation to the rights of the hospital against those responsible. Defendants remaining after various dismissals by the district court are (1) Pinski Bros., Inc., the mechanical contractor on the hospital remodeling project wherein the boiler explosion allegedly occurred, and (2) the architects on the project, Kenneth K. Knight and A. Andrew Van Teylingen, co-partners, doing business as Knight and Van Teylingen.

The complaint of Home Insurance, the subrogated insurer,

alleges negligence on the part of the architects resulting in the boiler explosion and the resulting property damage loss in three counts: I. negligent design, supervision, and inspection of the hot water heating system by the architects; II. breach of contract and warranty in that the architects contracted to sell to the hospital a hot water heating system not then in existence which, when delivered and put to use by the hospital, was not sound or merchantable; and III. breach of contract and warranty by the architects in contracting to manufacture the hot water heating system which, when delivered to the hospital, was not fit for the purpose intended.

Following filing and service of the complaint the architects tendered defense of the action to The Home Indemnity Company with whom the architects carried policy #PGA6-71-56, herein identified as the comprehensive liability policy. Thereafter Home Indemnity refused this tender. The architects then filed their answer containing, among other things, a separate "Twelfth Defense, Counterclaim and Setoff" by one of the architects, Kenneth K. Knight. Therein Knight alleged that insurance coverage was afforded under the architects' comprehensive liability policy, that such coverage constituted a defense, and that Home Indemnity was liable for the costs and expenses, including attorneys' fees, incurred in defending the action and prosecuting the Counterclaim and Setoff.

Home Insurance and Home Indemnity separately replied to the architects' Answer and answered the Counterclaim and Setoff. Neither alleged or separately pleaded as affirmative defenses any conditions, exceptions, or exclusions of coverage under the comprehensive liability policy. It is agreed that Home Insurance and Home Indemnity are one and the same corporate entity, the latter being a wholly owned subsidiary of the former. Neither affirmatively alleged or specifically pleaded that Home Indemnity was not authorized to write

an architect's malpractice policy in Montana nor anything relating to its filing of rates and forms with the State Insurance Commissioner.

The architects demanded a jury trial in their pleadings. The issues relating to the architects' insurance coverage were severed from the other issues for separate trial without a jury. The architects filed motions to dismiss and for summary judgment on the issue of liability against Home Insurance on all counts of negligence and on the "Twelfth Defense, Counterclaim, and Setoff". Home Indemnity filed a motion for summary judgment on the architect's counterclaim for costs, attorneys' fees and damages. The district court denied the architects' motion to dismiss the separate counts in the complaint of Home Insurance and the architect's motion for summary judgment on the issue of liability contained in the complaint and "Twelfth Defense, Counterclaim, and Setoff". At the same time the district court ordered a non-jury trial "for the sole and exclusive purpose of determining the question of whether the Home Indemnity Company was authorized by the State Insurance Commissioner to write Professional Errors and Omissions Insurance" during the time in question.

Pursuant to the district court's order, this non-jury trial was held on March 4, 1970. At the conclusion thereof, the district court took the motion for summary judgment by Home Indemnity under advisement.

On March 25, 1970, the court entered its findings of fact, conclusions of law, and order for summary judgment. The findings of fact were that Home Insurance and Home Indemnity were one and the same corporate entity; that neither was authorized to write nor did write architect's malpractice policies; that Home Indemnity issued a comprehensive liability policy to the architects covering the period of time in question; that prior to and during the time in question architect Knight carried an architect's malpractice policy with another

company for which he paid premiums substantially in excess of those paid for the comprehensive liability policy; that both policies were sold to architect Knight by the same insurance agency; and that the architects did not purchase or pay any premium for products hazard insurance.

From these findings of fact the district court entered the following conclusions of law: the comprehensive liability policy was not ambiguous and the court could construe its coverage as a matter of law; that the comprehensive liability policy was not an architect's malpractice policy; that there was no meeting of minds that architect Knight was buying or Home Indemnity was issuing an architect's malpractice policy; that neither Home Insurance nor Home Indemnity had authority to write or charge for architect's malpractice insurance and it would be against public policy to permit any policy issued by them or premiums collected to be treated as or for architect's malpractice coverage; that the alleged negligence of the architects contained in the Home Insurance complaint against them fall within products hazard coverage which the architects did not purchase or pay a premium for; that the architects have no claim against Home Indemnity under the comprehensive liability policy and it provides no defense to the claims of Home Indemnity against the architects; that there is no genuine issue of material fact and Home Indemnity is entitled to summary judgment as a matter of law.

The order of the district court, in effect, granted summary judgment to Home Indemnity against the architect on all issues of insurance coverage and liability thereunder, dismissed the "Twelfth Defense, Counterclaim, and Setoff", and ordered the subrogation action of Home Insurance against the architects to continue. The architects appeal from this order of the district court of Cascade County.

It is apparent that absent insurance coverage in the comprehensive liability policy for the negligence alleged in the

Home Insurance complaint, the architects have neither a coverage defense to such complaint nor a coverage counterclaim against Home Insurance. Thus the underlying issue on appeal is the coverage afforded the architects under such comprehensive liability policy with respect to the negligence alleged in the Home Insurance complaint.

The architects contend that they are insured for the negligence alleged under "Coverage D" or "Coverage L" in the comprehensive liability policy. Other conditions, exclusions, and endorsements in the policy are involved in their argument but their basic claim of coverage is bottomed on these two coverage provisions.

It is noted at the outset that the comprehensive liability policy here involved does not contain an overall insuring agreement covering the entire policy, but contains separate insuring agreements for the separate coverages.

The basic insuring agreement for "Coverage D" in the policy provides:

"PROPERTY DAMAGE LIABILITY—EXCEPT AUTOMOBILE: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident."

Endorsement #6 excludes from this coverage "the products hazard" as defined therein. Thus, although it is undisputed that the architects here did not purchase nor possess "products hazard" nor "products liability" coverage, the definition of "products hazard" becomes important in determining the exclusions from "Coverage D" which coverage the architects did purchase and carry.

As defined in the policy, in pertinent part, the term "products hazard" means:

"(1) goods or products manufactured, sold, handled or distributed by the named insured * * * if the accident occurs after the possession of such goods or products has

been relinquished to others by the named insured * * * and if such accident occurs away from premises [of the insured] * * *.

"(2) operations, including any act or omission in connection with operations performed by or on behalf of the named insured on the premises or elsewhere and whether or not goods or products are involved in such operations, if the accident occurs after such operations have been completed or abandoned and occurs away from premises [of the insured] * * *; provided, operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to an agreement * * *."

In short the term "products hazard" as used in the policy covers products handled by insured and operations conducted by insured if the accident occurs *after* possession of the product has been transferred to others or *after* completion of operations of the insured. 45 A.L.R.2d 994; 31 Insurance Counsel Journal 436; Appleman, Insurance Law and Practice, V. 7A, § 4508; Insurance Co. of North America v. Electronic Purification Co., 67 Cal.2d 679, 63 Cal.Rptr. 382, 433 P.2d 174.

In the instant case, the architects concede that the insurance protection afforded by "Coverage D" excludes products liability from an accident occurring after the insured's goods or products are relinquished and after the insured's operations are completed. The architects contend however, that insurance coverage is afforded here because the accident occurred before the goods or products were relinquished and before their operations were completed, thereby rendering the exclusion inapplicable.

Under any view of the facts surrounding the accident appearing in the pleadings, admissions, answers to interrogatories and depositions, it is clear that the conversion of the old heating system to the new hot water heating system had not been completed at the time of the explosion, nor can it be

said that the architects had "relinquished possession" of the converted system to the Deaconess Hospital or to the mechanical contractor. It is equally clear that the architects' operations on the system had neither been completed nor abandoned. The situation in the instant case involved an uncompleted product and uncompleted operations. Under such circumstances, the "products hazard" defined in the policy had not yet occurred at the time of the boiler explosion. Accordingly "Coverage D" did not afford insurance protection for Counts II and III in the complaint, alleging breach of contract and warranty in the manufacture and sale of the hot water heating system.

The Home Indemnity Company contends that the hot water heating system had been completed as far as the architect was concerned, and that their only remaining duties were to inspect the work after the mechanical contractor had finished his work; according to The Home Indemnity Company, this falls within the proviso that "operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to an agreement." This contention cannot be sustained. See 12 Couch on Insurance 2d, § 44:435; 54 A.L.R.2d 518. The following cases construing the identical or substantially similar "products hazard" exclusion have held contrary to contention of The Home Indemnity Company. McNally v. American States Insurance Company (CCA 6), 308 F.2d 438 (failure of elevator between periodic inspections and maintenance under contract); Lumbermens Mutual Cas. Co. v. Town of Pound Ridge (CCA 2), 362 F.2d 430 (snow removal as required periodically by contract with accident occurring between periods of removal); Vito v. General Mutual Insurance Company (1962), 15 A.D.2d 289, 223 N.Y. S.2d 431 (explosion of propane tanks between periodic inspection, servicing and repairing under contract); R and O Elevator Co. v. Bituminous Casualty Corp., D.C., 194 F.Supp. 452 (aff'd

CCA 8), 293 F.2d 179 (elevator failure between monthly inspection and repair service pursuant to contract); Heyward v. American Casualty Co. of Reading, Pa., D.C., 129 F.Supp. 4 (single contract for large housing projects where tenants put into possession on completion of each house with injury to tenant due to gas explosion from allegedly defective plumbing); West v. MacDonald, 103 N.J.Super. 201, 247 A.2d 20 (maintenance firm for swimming pool under contract turned water into pool with owner to turn it off and rest of maintenance work would be completed at a later time with water damage to pool in meantime); and Arnold v. Edelman (Mo.1965), 392 S.W.2d 231 (installer of exit door in building required to periodically adjust it after installation; accident occurred between periodic adjustments and before acceptance of the door by the owner).

Additionally exclusion (a) to "Coverage D" excludes liability here. The operative words of this exclusion are:

"This policy does not apply: (a) to liability assumed by the insured under any contract or agreement except under [coverage D], * * * (2) as respects the insurance which is afforded for the Products Hazard as defined, a warranty of goods or products;".

As the insured purchased no products hazard insurance in the instant case, this exclusion excludes liability assumed under any contract or agreement. As Counts II and III in the subrogated insurer's complaint against the architects are based on breach of contract and warranty, these claims are excluded from "Coverage D".

For the foregoing reasons, no insurance is provided under "Coverage D" for Counts II and III of the subrogated insurer's complaint against the architect. However, Count I alleging negligent design, supervision and inspection of the hot water heating system by the architects falls within the basic all-inclusive insuring agreement of "Coverage D" quoted previously in this opinion. The c o n s t r u c t i o n is further

strengthened by the absence of a "business operations" exclusion to "Coverage D", and the presence of such exclusion in "Coverage L".

No insurance against the negligence of the architects alleged in Count I of the complaint is afforded under "Coverage L" because of the "business operations" exclusion. The pertinent parts of this exclusion read:

"This endorsement does not apply: (a) (1) to any business pursuits of an insured, except, under [coverage L], activities therein which are ordinarily incident to non-business pursuits, (2) to the rendering of any professional service or the omission thereof  *  *  *".

As the activities forming the basis of Count I in the complaint are obviously "business pursuits" involving the rendering of "professional service" by the architects, this exclusion eliminates any insurance otherwise provided by the basic insuring agreement in "Coverage L".

The architects contend, however, that endorsement #6 restores the coverage afforded by the basic insuring agreement in "Coverage L" by elimination of the "business operations" exclusion to that coverage. Endorsement #6 provides:

"It is agreed that the policy does not apply except in connection with the conduct of a business of which the named insured is the sole owner."

This endorsement has no such effect. It simply says that any coverage for business operations applies only to a business of which the named insured is the sole owner. "Coverage D", which does not exclude business operations, is clearly the coverage to which it refers, not "Coverage L". The architects' argument is without merit.

Reference must also be made in this opinion to endorsement #10, the validity and operative effect of which is in dispute. Endorsement #10 provides:

"ENGINEERS, ARCHITECTS OR SURVEYORS—EXCLUSION OF PROFESSIONAL LIABILITY.

"It is agreed that the policy does not apply to injury, * * * or destruction arising out of defects in maps, plans, designs or specifications, prepared, acquired or used by the insured."

■ ■ This endorsement did not appear on the policy as originally written or as subsequently renewed for the policy period in which the boiler explosion occurred. It was delivered to the architects after the boiler explosion occurred. The architects had no notice thereof until delivery following the explosion. They received no premium adjustment therefor. Under these circumstances it is completely invalid and of no effect. It is axiomatic that an insurer cannot unilaterally alter the coverage afforded by an insurance policy without consideration, without consent, and without notice until after the loss occurs.

One other matter extensively argued by counsel was whether extrinsic circumstances and evidence of factors allegedly affecting coverage developed during pretrial discovery and one court hearing could properly be considered in ruling on the summary judgments and dismissals before the court. These extrinsic circumstances concerned the inability of the insurer to write malpractice insurance in Montana, the fact that the architects carried malpractice insurance with another company at a substantially higher premium with the same insurance agent with whom they carried the comprehensive liability policy, the undisclosed beliefs and subjective intent of the respective parties as to the scope of coverage of the comprehensive liability policy, and similar extrinsic factors bearing on coverage other than the language of the policy.

The district court entered an express conclusion of law in its order on summary judgment reading as follows:

"I.

"The General Comprehensive Liability Policy issued by Home Indemnity is not ambiguous, and the meaning and purpose and effect thereof may be determined by the Court as a matter of law."

258

■ We agree. Where the policy is unambiguous, the terms and coverage of the policy must be determined by its language alone and extrinsic evidence is inadmissible to establish its meaning. Section 13-704, R.C.M.1947; James v. Prudential Ins. Co., 131 Mont. 473, 312 P.2d 125; Kansas City Fire & Marine Ins. Co. v. Clark (D.C.Mont.), 217 F.Supp. 231 (1963) affirmed 9 Cir., 329 F.2d 647; Glacier Gen. Assur. Co. v. State Farm Insurance Co., 150 Mont. 452, 436 P.2d 533. Accordingly the findings of the district court based on such extrinsic evidence cannot stand.

■ Finally, the architects contend that the insurer must affirmatively plead exceptions and exclusions from coverage contained in the policy or policy defenses based thereon are waived. Not so under the circumstances of this case. The entire policy and the insurer's denial of coverage were incorporated in the pleadings by architect Knight's "Twelfth Defense, Counterclaim, and Setoff". Extensive pretrial discovery disclosed the endorsements and exclusions relied on. Rule 8(c), M.R.Civ.P. does not enumerate policy exceptions and exclusions as a matter that must be affirmatively pleaded. Where, as here, the insured incorporates the entire policy as a defense, where all parties understand the exclusions claimed by the other, and where no party is misled to his prejudice, any reason for requiring special pleading of such matter disappears, and issues may be joined by general denial.

The findings of fact, conclusions of law, order and judgment of the district court dated March 25, 1970 are vacated and set aside. The cause is remanded to the district court for consideration of the further issues raised by the motion for summary judgment of The Home Indemnity Company against Kenneth K. Knight on the "Twelfth Defense, Counterclaim and Setoff" in this action and entry of findings of fact, conclusions of law, order and judgment on said motion accordingly, not inconsistent with our holdings herein.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES CASTLES, JOHN C. HARRISON and DALY, concur.