Faye POLING, Appellant (Plaintiff below),

v.

NORTH AMERICAN LIFE AND CASU-
ALTY COMPANY, Appellee
(Defendant below).

No. 5020.

Supreme Court of Wyoming.

April 16, 1979.

Rehearing Denied May 29, 1979.

Raymond B. Hunkins of Jones, Jones, Vines & Hunkins, Wheatland, for appellant.

Frank J. Jones, Wheatland, for appellee.

Before RAPER, C. J., McCLINTOCK, THOMAS and ROSE, JJ., and GUTHRIE, J., Retired.*

THOMAS, Justice.

The substantive issue to be resolved in this case is whether a certificate of insurance furnished to an insured under a group policy for credit life insurance should control over the provisions of the policy if the terms of the two instruments conflict. The apparent difference is in the respective provisions of the two instruments relating to the insurer's obligation in the event of the suicide of the insured. Because of the contents of the record a threshold question of whether the fact of the insured's suicide was before the trial court must be resolved. The trial court granted a motion for summary judgment filed by the insurance company. Although the ground for the trial court's decision is not stated, the result is consistent with a conclusion that the insured did commit suicide, and the policy provision relating to suicide is to be applied rather than the similar provision in the certificate of insurance. We shall affirm the judgment of the district court.

The action was brought by the widow of Henry R. Poling, who was an insured under a group credit life insurance policy issued by North American Life and Casualty Com-

pany. The policy was issued in connection with a promissory note evidencing a loan that Poling and his wife obtained from the First National Bank of Chugwater. The Polings paid the premiums on the insurance policy, which amounted to $244.80 at the time of Henry Poling's death.

Pursuant to the company's policy, a "Certificate of Insurance" was prepared and sent to Henry Poling. Although the bank transmitted the certificate, the document was prepared by the insurance company. The certificate states that it describes the principal provisions of the group policy, and that it is subject to all provisions of the group policy. A suicide clause is included in the certificate. That clause reads:

"SUICIDE: If death of the *Insured Person* occurs by Suicide, while sane or insane, within _____ year(s) from the *Insured Person's* Effective Date for the insurance provided by this Policy, the liability of the Company will be limited to the premiums paid for such Insurance."

An identical clause appears in the master insurance policy issued to the bank. In the master policy, however, the blank space appearing in the clause in the certificate is filled in with the word "two," and it provides that should the death of the insured occur as a result of suicide within two years from the effective date for the insurance the company's liability will be limited to the premiums paid for the insurance.

Other sections of the master policy which are pertinent to this case are paragraphs 1 and 4 of the general provisions. Paragraph 1 reads:

"ENTIRE CONTRACT CHANGES: This Policy and the application of the Policyholder, a copy of which is attached to this Policy, and the applications, if any, of the *Insured Persons,* will constitute the entire contract between the parties * * *."

Paragraph 4 reads:

"CERTIFICATES: The Company will issue to the Policyholder for delivery to

---

* At the time of oral argument, Guthrie, J., was Chief Justice. He retired from the court on December 31, 1978. By order of the court, entered on January 1, 1979, he has been retained in active judicial service pursuant to § 5, Art. 5, Wyoming Constitution, and § 5-1-106(f), W.S.1977, and has continued to participate in the decision and opinion of the court in this case.

each *Insured Person,* an Individual Certificate summarizing the benefits for which the *Insured Person* is insured by this Policy including any changes in the amount of Insurance because of a change in classification and the rights to which such *Insured Person* is entitled in case of termination of Insurance or termination of this Policy. *Such Certificate will not constitute a part of this Policy nor will it change, modify or invalidate any of the terms and conditions of this Policy."* (Emphasis supplied.)

The substantive issue as presented to the lower court and to this court on appeal is which of the suicide clauses, the one contained in the master policy or the one contained in the certificate, should be applied to determine the rights of the parties. Implicit in the argument of Mrs. Poling is the assumption that the clause in the certificate would properly be construed as having a zero where the blank appears. She urges that the two-year period during which the payment of benefits is limited should be disregarded when the insurance company failed to include such a limitation in the certificate given to the insured. Before the substantive issue is determined a threshold procedural question must be resolved. Mrs. Poling suggests that the fact of suicide is not present in the record, and since it is not the district court should have granted her motion for summary judgment instead of granting the motion filed by North American Life and Casualty Company.

The record indeed is lean if not gaunt. It may be summarized fairly for our purposes as consisting of the Complaint; the Answer; the Affidavit of Mrs. Poling to which is attached the Certificate of Insurance upon which she relies; Mrs. Poling's Motion for Summary Judgment; an Affidavit in Support of Motion for Summary Judgment by Ed Brown which was presented by Mrs. Poling; a Memorandum Brief filed by Mrs. Poling; a Motion for Summary Judgment filed by North American Life and Casualty Company; a Stipulation presenting for consideration by the court the master insurance policy and the Employment Contract between Mrs. Poling and her attorney; the

Order Granting Summary Judgment which was entered in favor of North American Life and Casualty Company; and Mrs. Poling's Notice of Appeal. The word "suicide" does not appear in this record except for the references in the certificate of insurance and the master insurance policy and in several places in Mrs. Poling's Memorandum Brief. We find before us a case in which the fact of suicide is not positively present, yet one in which the only issue the parties discuss relates to an asserted conflict between the suicide clauses of the certificate of insurance and the master insurance policy.

We are not unmindful of cases which hold that the insurer should plead suicide as an affirmative defense in an action brought upon an ordinary life policy. *New York Life Ins. Co. v. McNeely,* 52 Ariz. 181, 79 P.2d 948 (1938); *Bondurant v. Brotherhood of American Yeomen,* Mo.App., 199 S.W. 424 (1917); *Municipal Securities Corp. v. Metropolitan Street Ry. Co.,* 196 Mo.App. 518, 196 S.W. 400 (1917); *Dent v. National Life & Accident Ins. Co. of Tennessee,* Tex. Civ.App., 6 S.W.2d 195 (1928); *Federal Life Ins. Co. v. Wilkes,* Tex.Civ.App., 218 S.W. 591 (1920). In this instance we find a complaint which alleges life insurance coverage, the death of the insured, demand for payment, tender of the sum of $244.80 as payment in full, which was rejected, further demand for payment and entitlement to attorney's fees. The Answer of North American Life and Casualty Company effectively admits all factual allegations of the Complaint, but also effectively denies liability. The sum of $244.80 is clarified in Mrs. Poling's Memorandum Brief as representing the premiums paid for the life insurance coverage. We also know that Mr. Poling's death occurred within two years of the effective date of his insurance coverage. The suicide clause in both the certificate of insurance and the master insurance policy limits the company's liability to the premiums paid for such insurance in the event of suicide if the clause is applicable.

■ We have no question that the better practice is for an insurance company rely-

ing upon suicide as a defense to plead that fact as an affirmative defense in its answer. In the vast majority of instances that would sharply focus a factual issue. In this case, however, that fact obviously was assumed by both parties and the district court. We conclude, therefore, that the issue was injected sufficiently by the plaintiff's allegation of the tender of the premiums, which was admitted by North American Life and Casualty Company, and which was the limit of the company's obligation in the event of suicide. We can discern no element of unfairness, surprise, or any policy consideration which in this instance should inhibit us from treating the case as the parties presented it to the district court and as they have argued it in our court. As to this particular situation, the matter aptly was stated by the Supreme Court of Montana as follows:

" * * * Where, as here, the insured incorporates the entire policy as a defense, where all parties understand the exclusions claimed by the other, and where no party is misled to his prejudice, any reason for requiring special pleading of such matter disappears, and issues may be joined by general denial." *Home Insurance Company v. Pinski Bros., Inc.,* 156 Mont. 246, 479 P.2d 274 (1971).

Mrs. Poling suggests that she never did concede the fact of suicide, and that under the circumstances she can rely at this stage of the proceedings upon the failure of the insurance company to present it. While the case arose in an entirely different context, some wisdom from this court appearing in *Horse Creek Conservation District v. Lincoln Land Company,* 54 Wyo. 320, 92 P.2d 572, 578 (1939), is appropriate here. Our court, there quoting from the Supreme Court of Nevada, adopted with approval the concept that neither party should be allowed to obtain an unfair advantage by the concealment and suppression of facts. Counsel conceded in this instance that unless Mrs. Poling should be awarded judgment because of the record deficiencies as to the fact of suicide it would be a purposeless proceeding to refer the matter back to the district court to have the factual aspect of the suicide issue resolved.

As this case evolved and was presented to the district court it might more appropriately be termed one for a declaratory judgment. Mrs. Poling, in effect, assumed the facts necessary to permit her to seek a declaration that the variance between the certificate of insurance and the master insurance policy resulted in an ambiguity which entitled her to the most favorable construction to the effect that the suicide limitation was applicable for zero years. Such an action appropriately could be brought under the provisions of the Uniform Declaratory Judgments Act, §§ 1–37–101, W.S.1977, et seq. The Act is remedial in nature and its purpose is to "settle and to afford relief from uncertainty and insecurity with respect to legal relations, and is to be liberally construed and administered." Section 1–37–114, W.S.1977. This court, in *Ohio Oil Company v. Wyoming Agency,* 63 Wyo. 187, 179 P.2d 773 (1947), considered the application of the Uniform Declaratory Judgments Act even though counsel had not discussed it. The language there appearing is:

" * * * we think it is not improper for us to add that, after a trial of issues raised by pleadings showing a dispute over the title, we should not reverse the judgment which may be sustained under that act * * *."

The court went on to hold that the purpose of the Act may be carried out in actions not expressly based on the Act. See also, *Johnson v. Ford,* 233 Ark. 504, 345 S.W.2d 604 (1961); *Langdon v. Hurdle,* 15 N.C.App. 158, 189 S.E.2d 517 (1972); and *C____ S____ v. J____ W____,* Mo. App., 514 S.W.2d 848 (1974).

■ The pleadings, affidavits, motions, and briefs of counsel adequately presented a controversy to be resolved by the district court. While the several pleadings are not models of pleading, the documents were sufficient to present the court with a justiciable controversy between adverse parties which was ripe for judicial determination. *Anderson v. Wyoming Development Co.,* 60

Wyo. 417, 154 P.2d 318 (1944); *Brimmer v. Thomson,* Wyo., 521 P.2d 574 (1974). The district court properly decided the case on its merits.

Turning to the substantive issue, Mrs. Poling urges that an ambiguity exists because of the difference in the two suicide clauses. It is her position that rules of contract construction entitle her to the most favorable interpretation, which is that the limitation found in the suicide clause was not effective because it was for zero years. North American Life and Casualty Company contends that the certificate of insurance and the master insurance policy are not to be construed together as one contract. Its stance is that the certificate of insurance is evidence of coverage only, and that the master insurance policy alone describes the rights and obligations of the parties.

 We adopt, in affirming the district court, the rule that the certificate of insurance is evidence of coverage only. *Standard of America Life Ins. Co. v. Humphreys,* 257 Ark. 618, 519 S.W.2d 64 (1975); *Chrysler Corp. v. Hardwick,* 299 Mich. 696, 1 N.W.2d 43 (1942); *Straub v. Crown Life Ins. Co.,* Mo.App., 496 S.W.2d 42 (1973); *Kahn v. Great-West Life Assur. Co.,* 61 Misc.2d 918, 307 N.Y.S.2d 238 (1970); *Thull v. Equitable Life Assur. Soc.,* 40 Ohio App. 486, 178 N.E. 850 (1932). In this regard it is important to note that the certificate of insurance, in the "Summary of Certain Principal Provisions of the Policy," provides in part as follows:

" * * * Certificates issued to the Policyholder for delivery to each *Insured Person* summarizing his benefits will not constitute a policy nor change, modify or invalidate any of the terms or conditions of the Group Policy."

Given the previously quoted language of the master insurance policy, we hold that in such a situation any conflict between the terms of the certificate and the master policy results in the terms of the master policy being applied to determine the rights and obligations of the parties. *Gray v. Aetna Life Ins. Co.,* 53 Ala.App. 257, 299 So.2d 302 (1974); *Austin v. Metropolitan Life Ins. Co.,* La.App., 142 So. 337 (1932).

 Mrs. Poling further urges that the legislature has made the certificate of insurance a part of the contract by requiring its issuance to the insured. She relies upon § 26–17–117, W.S.1977, which reads as follows:

"The group life insurance policy shall contain a provision that the insurer will issue to the policyholder for delivery to each person insured an individual certificate setting forth a statement as to the insurance protection to which he is entitled, to whom the insurance benefits are payable, and the rights and conditions set forth in sections 26.1–387 [§ 26–17–118], 26.1–388 and 26.1–389 [§§ 26–17–119 and 26–17–120] following."

North American Life and Casualty Company correctly points out, however, that that statutory prohibition does not apply to policies issued to a creditor to insure debtors of such a creditor, i. e., credit life insurance policies. Section 26–17–110(a)(i), W.S.1977. In the credit life insurance situation, the applicable statutory provision is § 26–17–121, W.S.1977, which provides as follows:

"A policy issued to a creditor to insure debtors of such creditor shall contain a provision that the insurer will furnish to the policyholder for delivery to each debtor insured under the policy a form which will contain a statement that the life of the debtor is insured under the policy and that any death benefit paid thereunder by reason of his death shall be applied to reduce or extinguish an indebtedness."

The requirement of this statute is not in any way inconsistent with the rule that the master policy will be applied to govern the rights and obligations of the parties.

Judgment affirmed.